Jack ROACH, Relator,

v.

## COMMISSIONER OF DEPARTMENT OF NATURAL RESOURCES, Respondent,

## Intervening Landowners on Kimball Point, Respondent.

### No. CO–84–525.

Court of Appeals of Minnesota.

Oct. 16, 1984.

Joseph W. Ryan, Ryan, Ryan & Zimmerman, Aitkin, for Jack Roach.

Hubert H. Humphrey, III, Atty. Gen., Tibor Gallo, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Department of Natural Resources.

Jeffrey J. Haberkorn, Hudson & Haberkorn, Aitkin, for Intervening Landowners on Kimball Point.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This appeal is on a decision of the Commissioner of Natural Resources to deny a permit for road and bridge construction. Appellant contends the decision is not adequately supported by evidence and misapplies environmental statutes and rules. The Commissioner opposes the construction of a roadway in a lakebed and asserts appellant has a nondetrimental alternative, construction of a longer bridge. The Commissioner's decision is supported by intervening land owners who contend the road proposal poses hazards to a natural lake resource. We affirm the administrative decision.

## FACTS

Appellant Roach proposes development of an island in Big Sandy Lake for seven or eight "high investment," "high quality" private homes. For access over a 340 foot channel of the lake, he proposes a 16 foot bridge and fill in the lakebed to support a 325 foot roadway. The road construction proposal and bridge project each are estimated to cost about $2,500.00.

A hearing examiner concluded appellant's plan for extensive fill in the lakebed was unreasonable and impractical, and would "cause impairment of natural resources." In his findings, the examiner observed adverse effects of the construction on an "excellent" fish spawning habitat (due to obstruction of necessary wave action) and on the habitat for waterfowl and other wildlife.

The hearing examiner concluded that appellant had feasible and prudent alternatives to use a timber bridge across the width of the channel or to use boats for access. The longer bridge would cost roughly $53,500.00, a price the examiner found "not necessarily unreasonable."

Findings and conclusions of the Commissioner expand on the examiner's references to adverse environmental effects of the proposed road construction. Both the examiner and the Commissioner found that appellant's proposal would fill a narrow natural channel needed by boats. Undisputed evidence leads to this finding of the examiner, adopted by the Commissioner:

> No responsibility has been fixed for ongoing maintenance for the proposed project or for dredging beneath the bridge to maintain the channel, should that become necessary.

The Commissioner agrees with the examiner that an alternative bridge proposal would have "much less or no damaging effects on the natural resources environment."

## ISSUE

Does substantial evidence support the Commissioner's decision to refuse placement of fill for construction of a road in a lakebed?

## ANALYSIS

■ 1. Under the Administrative Procedure Act, the decision of the Commissioner

may be reversed if it is "[u]nsupported by substantial evidence" or "arbitrary or capricious" so that appellant's substantial rights are prejudiced. Minn.Stat. § 14.-69(e) and (f) (1982). Appellant is also entitled to relief if his rights are prejudiced because the administrative decision is affected by an "error of law." Minn.Stat. § 14.69(d) (1982).

We must defer to the fact finding and the expertise of the administrator, and avoid substituting our judgment for his. *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977). On the other hand, we must observe whether the administrator has examined the issues and engaged in "reasoned decision-making." *Id.*

In summary, the scope of review is to determine whether the Commissioner's decision is lawful and reasonable. *Id.* at 826.

Further, we must keep in mind that appellant has the burden to prove support for his permit application. Minn.Stat. § 105.45 (1982); *Application of City of White Bear Lake*, 311 Minn. 146, 247 N.W.2d 901 (1976).

2. A decision in this case requires examination of standards found in two provisions of state statute.

First, permit applications are governed by the Water Management Law, Minn.Stat. §§ 105.37–.55. A permit is needed for construction which obstructs on any public water. Minn.Stat. § 105.42. In deciding on the merits of the petition the Commissioner is bound by this provision of statute:

> If the commissioner concludes that the plans of the applicant are reasonable, practical, and will adequately protect public safety and promote the public welfare, he shall grant the permit * * *. In all other cases the commissioner shall reject the application or he may require such modification of the plan as he deems proper to protect the public interest.

Minn.Stat. § 105.45 (1982).

Applying this statutory standard, the hearing examiner reached the conclusion that appellant's plan was unreasonable and impractical, and that it could only be accepted if modified to provide for a bridge to span the 340 foot channel of Big Sandy Lake. The Commissioner agreed with these conclusions of the hearing examiner.

Second, the environmental impact of appellant's plan requires consideration of the Minnesota Environmental Policy Act, Minn. Stat. ch. 116D, and related legislation. Particularly, both the hearing examiner and the Commissioner gave attention to this legislative mandate:

> No state action significantly affecting the quality of the environment shall be allowed, nor shall any permit for natural resources management and development be granted, where such action or permit has caused or is likely to cause pollution, impairment, or destruction of the air, water, land or other natural resources located within the state, so long as there is a feasible and prudent alternative consistent with the reasonable requirements of the public health, safety, and welfare and the state's paramount concern for the protection of its air, water, land and other natural resources from pollution, impairment, or destruction.

Minn.Stat. § 116D.04, subd. 6 (1982).

The hearing examiner viewed a longer bridge as a "feasible and prudent alternative" and the Commissioner agreed with that conclusion. Both found that the roadway without a bridge impaired natural resources.

Ample evidence supports the findings and conclusions of the Commissioner.

The evidence for appellant was confined to his own views and the testimony of a builder who designed the proposed roadway. Appellant introduced no evidence on the environmental and navigational effects of the proposed road. The Department of Natural Resources offered testimony of an hydrologist, a fishery supervisor, a wildlife manager and a county conservation supervisor. The expertise of these witnesses is noteworthy, and their testimony rests as uncontroverted proof of significant impair-

ment of natural habitat for waterfowl and for the spawning and rearing of fish. Uncontradicted evidence shows that a narrow boating channel would be obstructed by the road development appellant proposes.

Appellant maintains evidence for the Department fails to show the significance of damage done by the proposed road. He points to the 5,000 acre size of Big Sandy Lake and the relative unimportance of an improvement covering about 23,000 square feet of lake bottom. He contends the testimony of witnesses shows that the damage is to a very small part of the wildlife habitat in the area. The real and significant damage done by a roadway over more than 300 feet of lakebed is undisputed, and the proofs of this damage adequately support the views of the Commissioner as to the significance of this environmental damage.

Cost estimates of $5,000 for the causeway proposal and $53,500 for a timber bridge were furnished by appellant's witness. The development proposal envisions a sizeable investment, and it was reasonable for the Commissioner to conclude that the alternative of bridge construction was feasible. There is no evidence contradicting a finding the bridge would involve few damaging environmental effects.

■ Appellant argues that the Commissioner erred in applying the standard of Minn.Stat. § 116D.04, subd. 6. He asserts that the road project is not a natural resources "development." We disagree. The standard declared in this section is properly applied to complement and enlarge the demands of Minn.Stat. § 105.45 on public welfare and safety.

■ 3. The Commissioner observed in his Order that similar road and bridge construction had occurred over nineteen years ago to connect islands in Big Sandy Lake to the mainland. His action extends to a private road proposal the principles of public law and policy well-established for public roads since enactment of modern legislation on environmental protection and water resources management. *See County of Freeborn v. Bryson,* 297 Minn. 218, 210

N.W.2d 290 (1973); *County of Freeborn v. Bryson,* 309 Minn. 178, 243 N.W.2d 316 (1976); *Application of City of White Bear Lake,* 311 Minn. 146, 247 N.W.2d 901 (1976); and *Urban Council, v. on Mobility v. Minnesota Department of Natural Resources,* 289 N.W.2d 729 (Minn.1980). In the second *Bryson* case, the Minnesota Supreme Court observed:

> Times change * * *. [R]emaining resources will not be destroyed so indiscriminately because the law has been drastically changed by the (Environmental Rights) Act. Since the legislature has determined that this change is necessary, it is the duty of the courts to support the legislative goal of protecting our environmental resources.

*Bryson,* 309 Minn. at 188, 243 N.W.2d at 321. This policy has uniquely important meaning in a case dealing with a significant obstruction proposed on a major Minnesota lake. The established judicial stance on an issue of this kind dictates that we subscribe to this well-stated conclusion of the Commissioner in a memorandum attached to his Order:

> The Applicant here seeks to appropriate a portion of the public domain, the lakebed, for enhancing his development of the island, a private property. As part of this appropriation, there will be: water quality disruption during construction, destruction of protected vegetation, destruction of wildlife habitat, destruction of fish spawning and adult habitat, obstruction of navigation, and creation of an esthetic intrusion and a potential water safety hazard. In return, the value of the island lots will probably increase because a few future owners can drive their cars out there. There is no general benefit or return to the public at large, and there is no benefit at all that could conceivably offset the environmental disruption that would be caused.

> There is no inherent right to appropriate public waters to build a road to an island. In this case, the purely private economic gain does not warrant a permanent, irretrievable loss of public waters.

**436**

Appellant attacks numerous conclusions of the Commissioner based on environmental rules of the Department of Natural Resources. Because the decision of the hearing examiner and the Commissioner is duly based on provisions of statute, we need not examine these additional grounds stated for denial of the proposed permit.

### DECISION

Substantial evidence supports the decision of the Commissioner of Natural Resources to refuse appellant's proposal for a road improvement in the lakebed of Big Sandy Lake. Appellant did not submit in these proceedings an alternative proposal for a bridge of the kind the Commissioner views as having little or no detrimental effect on natural resources, and a bridge proposal may be made in future proceedings.

Affirmed.