**In the Matter of the Alteration by Robert W. EIGENHEER, of the Cross-section of Wetland 2–61W, Anoka County.**

**No. C9–89–1661.**

Court of Appeals of Minnesota.

March 27, 1990.

Edward J. Hance, Hance & Levahn, Ltd., Minneapolis, for relator Robert W. Eigenheer.

Hubert H. Humphrey, III, Atty. Gen., William A. Szotkowski, Sp. Asst. Atty. Gen., St. Paul, for respondent Com'r of Natural Resources.

J.N. Alexander, Com'r Minn. Dept. of Natural Resources, St. Paul, observer.

Considered and decided by HUSPENI, P.J., and KALITOWSKI and KLAPHAKE, JJ.

## OPINION

HUSPENI, Judge.

Relator Robert Eigenheer appeals from the Commissioner of Natural Resources' order to remove fill from protected wetland. We affirm.

## FACTS

The facts in this case are undisputed. We, therefore, essentially adopt the findings of fact of the Commissioner of Natural Resources.

In 1987, Jon Hegner owned a piece of property in the City of East Bethel, Anoka County, the north half of which is part of a protected[1] wetland. The southeastern portion contains a small strip of upland along Polk Street N.E. (the western boundary). The southern middle portion of Hegner's property is protected wetland and the southwestern portion is several acres of wooded upland. During the summer of 1987, Hegner filled approximately 75 feet of the portion of protected wetlands with sandy soil, separating the western and eastern upland portions. This fill constituted the beginning of a roadway across the wetland. On August 18, 1987, Hegner orally agreed with the Department of Natural Resources (DNR) to remove the fill, but never did so. On December 27, 1987, Hegner sold this property to relator, Robert Eigenheer.

The property is bordered on the south by two pieces of land, one owned by Lennarth and Irene Stearn and the other by David and Kathleen Bell. The wetland extends approximately 200 feet south of the Eigenheer property and is divided approximately equally between the Bells' and the Stearns' properties.

The strip of upland between Polk Street and the wetland is too small to build a home that would comply with highway and

---

1. "Protected" waters are those waters of the state identified as public waters or wetlands under Minn.Stat. § 105.37, subds. 14 or 15, or section 105.391, subd. 1. Minn.R. 6115.0170, subp. 31 (1990).

utility set-back provisions, set-back rules regarding the wetland, and regulations regarding septic systems. The several acre upland east of the wetland is, therefore, the only suitable site on the property to build a home. Eigenheer bought the property with the intent to build his residence on the eastern upland portion.

There is no present road access to the eastern upland. State Highway 65 lies to the east, separated from Eigenheer's property by land owned by Joseph and Anna Najdek. In order to reach the home site by crossing the Najdek property, Eigenheer would have to cross another portion of the wetland, or gain an easement from the Stearns as well as from the Najdeks. Eigenheer has not sought easement access to the home site from the east.

Klondike Drive lies to the south, separated from the Eigenheer property by land owned by the Stearns. Eigenheer has not sought an easement access to the home site from the south.

Both Eigenheer and Hegner discussed the possibility of gaining access to the proposed home site by means of an easement for construction of a road from Polk Street on the west, around the southern edge of the wetland. This solution would involve less construction and smaller easement areas than gaining access from the east or south. In order to accomplish this, the Bells and the Stearns must grant easements for a road to Eigenheer. Negotiations for a road easement around this part of the wetland have been unsuccessful. The Bells and Stearns, particularly David Bell, desire to keep the land south of the wetland in its present state, a heavily wooded hillside, so it can remain a hunting ground.

On January 5, 1988, Eigenheer received a letter from the U.S. Army Corps of Engineers which indicated that a permit would not be required from that agency to place fill for a driveway across the wetland on his property because the area of water adversely impacted by the proposed project was too small to come under its jurisdiction. The Corps of Engineers' confirmation letter sent to Eigenheer states, on its cover page:

PLEASE NOTE THAT THIS CONFIRMATION LETTER DOES NOT ELIMINATE THE NEED FOR STATE, LOCAL OR OTHER AUTHORIZATION.

Page two of the confirmation letter from the Corps states, in part:

Any person intending to discharge dredged or fill material into Minnesota-designated "Protected Waters" shall submit an application to the Minnesota Department of Natural Resources (MDNR) before beginning work.

On March 15, 1988, Eigenheer wrote the Department of Natural Resources, informing them that a Corps of Engineers permit was not required and stating:

We are * * * asking you to send us the proper form to request a permit for private use to construct a driveway across the area of wetlands at issue, if you still in fact feel one is needed.

On April 21, 1988, Eigenheer wrote again to the DNR, following up on the March 15 letter, informing them that "the area where we propose to build the driveway is completely dry now and we would like to fill that area by May 10, 1988." The DNR responded to Eigenheer's letters with a certified letter received by Eigenheer on May 3, 1988, which stated in part:

[A]s we stated earlier, a permit cannot be granted for the filling you proposed. Therefore, we will be proceeding with an Order to remove the fill. You and Mr. Hegner can expect the order within 15 days.

The fill referred to in this letter is the 75 feet of fill placed by Hegner in 1987.

Sometime in July or early August, 1988, Eigenheer completed construction of the roadway across the wetland and connected the two upland portions of his property.

On August 10, 1988, Lieutenant John Vadnais, the head of the DNR's enforcement division for the metropolitan area, acting upon information that Eigenheer had completed the filling across the wetland, visited the property. Eigenheer was operating an earth moving machine on the upland area east of the wetland when Vad-

nais arrived. No citation was issued to Eigenheer at that time because Vadnais did not observe the filling of the wetland and Eigenheer made no admission in that regard. Vadnais informed Eigenheer orally that whoever had done the filling had violated the law prohibiting placement of fill in public waters without a permit.

The completed driveway extends approximately 400 feet across the wetland and is approximately 20 feet wide at the top and wider at the bottom due to side-sloping. The surface area covered by Eigenheer's fill is 8,250 square feet and is approximately 3 feet deep. The fill bisects the wetland, cutting off a portion extending, at its extreme, approximately 200 feet south of the fill area. The wetland area north of the filling is approximately 72 acres.

This wetland, described as a type where the soil is covered with six inches to three feet of water during the growing season, is considered highly productive for aquatic vegetation and as habitat for water birds and water fowl. Wetlands in Anoka County serve as nesting areas and habitat for approximately 160 species of birds, 50 species of game and numerous nongame species such as reptiles, amphibians and invertebrates. Normally, the wetland's basin contains approximately 18 inches of water and supports aquatic vegetation such as cattails and smartweed. The wetland is a basin for rainfall and snow melt from the surrounding area of approximately 200 acres, contains no inlet or known fish life and outlets to an Anoka County ditch system.

On August 13, 1988, the DNR ordered Eigenheer to remove all fill from and restore the bed of the wetland and to dispose of the fill material in an upland site with appropriate erosion control before November 30, 1988. He was also assessed $82.42 in costs and ordered to "refrain from future violations of Minnesota Statutes § 105 or related laws." Eigenheer's appeal of this order resulted in the administrative hearing which is the subject of this appeal.

On May 10, 1989, the administrative law judge issued a recommendation that the August 11, 1988, order be affirmed. On August 17, 1989, the Commissioner issued an order requiring Eigenheer to remove the fill material. This order was issued 136 days after the hearing. A misdemeanor prosecution charging Eigenheer with alteration of public waters in violation of Minn. Stat. §§ 105.42(1) and 105.541 has been continued pending resolution of this administrative matter.

## ISSUES

1. Do the administrative rules of the Department of Natural Resources create an absolute prohibition against placing fill in a designated wetland for the purpose of constructing a private driveway?

2. Does the Minnesota Water Management Law grant the Department of Natural Resources the authority to absolutely prohibit a private landowner from placing fill in a designated wetland for the purpose of constructing a driveway?

3. Is the order of the Commissioner of the Department of Natural Resources void because it was not issued within 60 days of the hearing?

## ANALYSIS

Agency decisions are presumed correct and will be reversed only when they reflect an error of law or when the findings are arbitrary and capricious or are unsupported by substantial evidence. *Crookston Cattle Co. v. Minnesota Department of Natural Resources*, 300 N.W.2d 769, 777 (Minn. 1981).

### I.

The relevant portion of Minn.R. 6115.-0190 reads:

Subpart 1. Goals. It is the goal of the department to limit the placement of any fill material into protected waters in order to:

A. minimize encroachment, change, or damage to the environment;

B. regulate the quantity and quality of fill and the purposes for which filling may be allowed based upon the capabilities of the waters to assimilate the material; and

C. maintain consistency with floodplain, shoreland, and wild and scenic rivers management standards and ordinances.

Subp. 3. Nonpermitted placement. Placement shall not be permitted in the following cases.

\* \* \* \* \* \*

F. to construct a roadway or pathway, or create or improve land accesses from peripheral shore lands to islands, or to facilitate land transportation across the waters; however, where a project is proposed by a federal, state, or local government agency and this provision would prevent or restrict the project, or create a major conflict with other public purposes or interests, the commissioner may waive this provision provided:

(1) There is no other feasible and practical alternative to the project that would have less environmental impact; and

(2) That the public need for the project rules out the no-build alternative;

The Commissioner in ordering that Eigenheer remove the fill concluded that

the filling done, or caused to be done by [Eigenheer] \* \* \* constitutes the filling of protected waters to construct a roadway within the meaning of [6115.0190, subp. 3f] \* \* \*. The filling \* \* \* is not a project proposed by a government agency within the meaning of [subp. 3f].

■ A plain reading of the Rule supports the Commissioner's determination. Construction of the driveway on Eigenheer's property was for an admittedly private purpose and constituted filling of the wetlands in violation of the clearly stated prohibitions of Rule 6115.0190, subp. 3f.

■ Eigenheer challenges the Commissioner's determination that the construction of the driveway comes within the prohibitions of Rule 6115.0190, subp. 3f and urges instead that his driveway is a "crossing" as described in Minn.R. 6116.0230, subp. 5e and that he should not be automatically denied a permit. We cannot agree.

Minn.R. 6115.0230, subp. 5e states:

Crossings of protected water basins or wetlands shall be allowed only where there is no feasible and practical alterna-tive which does not require filling, excavating, or the placement of a structure in protected waters.

Subpart 5 also requires the permit applicant to show that:

The project will involve a minimum of encroachment, change, or damage to the environment, including but not limited to fish and wildlife habitat, navigation, water supply, and storm water retention.

We agree with the Commissioner's determination that Eigenheer's driveway is not a "crossing" but rather a roadway or pathway to facilitate land transportation across the waters as stated in Minn.R. 6115.0190. In so stating, however, we do not hold that a private driveway can never be a "crossing." A driveway which does not destroy a cross-section of public waters with fill may, in fact, constitute a crossing. Eigenheer, however, subjected his driveway to the limitations of part .0190 by completely filling the wetland area, an action clearly prohibited under part .0190.

■ Further, even if we were to consider Eigenheer's driveway to be a "crossing," he failed to meet the burdens placed upon him both by statute and by rule.

In permit applications, the applicant has the burden of proving that the proposed project is reasonable, practical, and will adequately protect public safety and promote the public welfare.

Minn.Stat. § 105.45 (1988). *See Roach v. Commissioner of Department of Natural Resources*, 356 N.W.2d 432, 434 (Minn.Ct. App.1984). The evidence supports the Commissioner's conclusion that Eigenheer's project does not "promote the public welfare" within the meaning of Minn.Stat. § 105.45 because it destroys or endangers over 23,000 square feet of this type of protected wetland for no public purpose.

In addition, although required under Minn.R. 6115.0230, Eigenheer failed to establish that there is no feasible or practical alternative to his project or that it only "minimally encroached" on the wetlands. Alternatives such as a culvert or a bridge would have had far less environmental impact than the fill currently in place. An

8,250 square foot portion of the wetland has been destroyed and additional wetland area imperiled by being cut off from the wetland's main body.

The Commissioner's findings regarding the application of Minn.R. 6115.0196, subp. 3f and the nonapplication of Rule 6115.-0230, subp. 5e are neither arbitrary nor capricious. They are supported by substantial evidence.

## II.

■ "The extent of jurisdiction or authority bestowed upon an administrative agency is measured by the statute from which it derives its authority." *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976); *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn.1984). An agency decision may be reversed if it is in excess of the statutory authority granted to the agency. Minn. Stat. § 14.69 (1988).

Eigenheer argues that if in fact Minn.R. 6115.0190 applies in this case to prohibit a private landowner from placing fill in a designated wetland for the purpose of constructing a driveway, the rule is in excess of the statutory authority granted to the DNR by Minn.Stat. ch. 105. We cannot agree.

Minnesota has been protecting its public water resources since 1867. 1867 Minn. Laws, ch. 40; *In re Application of Christenson*, 417 N.W.2d 607, 609 (Minn.1987). In 1937,

> the legislature assigned to the Commissioner of Conservation (now the Department of Resources) the task of supervising a permit system for the use and appropriation of the state's waters, thereby conserving this valuable resource.

*Christenson*, 417 N.W.2d at 609. *See* 1937 Minn.Laws, ch. 468.

> Minn.Stat. § 105.42 (1988) states that:
> It is unlawful for * * * a person * * * to change or diminish the course, current or cross-section of any public waters, wholly or partly within the state, by any

means, including but not limited to, filling, excavating, or placing of materials in or on the beds of public waters, without first getting a written permit from the commissioner.

Once the Commissioner receives the permit application,

> [i]f the commissioner concludes that the plans of the applicant are reasonable, practical and will adequately protect public safety and promote the public welfare, the commissioner shall grant the permit. * * * Otherwise the Commissioner shall reject the application * * *.

Minn.Stat. § 105.45 (1988).

Pursuant to Minn.Stat. § 105.415 (1988), the Commissioner of Natural Resources adopted rules containing standards and criteria for the issuance and denial of the permits required by section 105.42. Minn.R. 6115.0190 and 6115.0230 are two of these rules. Inherent in Minn.R. 6115.-0190, subp. 3f, is the determination of the Commissioner that a plan for a private roadway which fills a cross-section of a public water cannot be shown to be reasonable, practical or to promote the public welfare. We believe that the statutory authority granted by the legislature to the Commissioner to protect the public waters of the state is broad enough to permit the prohibition in Rule 6115.0190, subp. 3f about which Eigenheer complains.

## III.

■ Minn.Stat. § 105.45 (1988) requires the Commissioner of the Department of Natural Resources to make an order pursuant to a hearing on an application for a permit within 60 days after the completion of the hearing. The hearing in this case was April 13, 1989 and the Commissioner's order was issued on August 17, 1989, clearly in excess of the 60 day limit. However, Minn.Stat. § 105.45 contains no sanctions for failing to issue an order within 60 days of the hearing.

A statute that does not declare the consequences for failure to comply with a requirement is generally held to be directive, not mandatory. *Sullivan v. Credit River Township*, 299 Minn. 170, 177, 217 N.W.2d

502, 507 (1974). Although compliance with the 60 day limit should be and is encouraged, the failure of the statute to state any consequences for delay persuades us that declaring the order void would be an inappropriate and unduly harsh remedy.

### DECISION

The Commissioner of Natural Resources' finding that Eigenheer's driveway is a nonpermitted filling of protected wetlands is not arbitrary, capricious or unsupported by substantial evidence.

The Department of Natural Resources' rule which prohibits a private person from filling a cross-section of a protected water for a driveway is not in excess of the department's statutory authority.

The Commissioner of Natural Resources' order to remove the fill is not void even though it was issued after the statutory 60 days from the hearing.

Affirmed.