**Dennis NASTROM, et al., Respondents,**

v.

**CITY OF BLAINE, Appellant.**

**No. C6–92–1806.**

Court of Appeals of Minnesota.

April 13, 1993.

Review Granted May 28, 1993.

Paul T. Ostrow, Sweeney, Borer & Ostrow, St. Paul, for appellant.

· Felix A. Mannella, Babcock, Locher, Neilson & Mannella, Anoka, for respondents.

Considered and decided by KALITOWSKI, P.J., and PARKER and MULALLY,* JJ.

## OPINION

PARKER, Judge.

The City of Blaine appeals the trial court's determination that the city council authorized public improvements by an inadequate number of votes, thereby invalidating special assessments. We affirm in part, reverse in part, and remand.

## FACTS

Since 1978, respondents Dennis and Char Nastrom have owned approximately five acres of land, used as a homestead, in the City of Blaine. Before 1987, no street or

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

public improvements adjacent to their land had been proposed or approved.

In 1987, the city engineering staff began preliminary work on Project 87–11, an unpetitioned plan for improvements to an area including the Nastroms' property and the plats of Aberdeen Oaks, Nu–Life Estates, and Olympic Glen. In December 1987 and April 1988, the owners of Aberdeen Oaks, Nu–Life Estates, and Olympic Glen submitted separate petitions to the city for street construction, water main, storm drainage, and sanitary sewer construction. These petitions were submitted independent of the city's project. Each petition described the property owned by the landowner by legal description only and did not reference any other property. Only one petition named streets abutting the properties.

In November 1988, the Blaine City Council consolidated the three individual petitions into Project 87–11 and ordered a public hearing on the project. This combined project included the Nastroms' property and that of other landowners who had not petitioned for improvements. The trial court found the Council's action constituted a joinder of the four proposed projects into Project 87–11. Among other things, the combined project involved relocation of existing streets and construction of new streets. City engineer Charles Lenthe testified the land in the improvement petitions submitted by landowners constituted 48 percent of land benefiting from Project 87–11.

At a public hearing on the consolidated project in December 1988, the Nastroms appeared and opposed it. Following the hearing, the Council voted five to two to approve construction of Project 87–11.

The cost of the project was $3,116,759.98, of which $2,757,603.89 was assessed against benefiting property owners. The Nastroms were assessed $75,012.75 on Lots 4, 5, 6, and 7, Block 1, Autumn Oaks.

The Nastroms challenged the assessment in district court. In their complaint they alleged, among other things:

The City did not follow proper procedures in ordering the assessment * * *

The City failed to comply with the notice of assessment hearing requirements pursuant to M.S.A. § 429.061. The City failed to comply with the notice of improvement hearing requirements pursuant to M.S.A. § 429.031.

The city asked the Nastroms in interrogatories to specify the allegations of defects in the city's compliance with the notice provisions of Minnesota Statutes Chapter 429. The only answer which appeared to address the question was the following:

That the notice of assessment was improper as including additional properties and providing a total assessment.

On the morning of the first day of trial, the Nastroms, over the objections of the city, raised for the first time the issues of the adequacy of the Project 87–11 petition and the Council vote necessary for approval. The Nastroms claimed they learned of the possible deficiencies for the first time that morning. The city did not move for a continuance. The trial court admitted evidence on this issue.

The trial court found the Council failed to comply with statutory procedures and that, therefore, the project was not properly authorized. Specifically, the trial court found that the Council had failed to ascertain, in violation of statute, whether the requisite percentage of owners in frontage of land abutting on streets named in the petition as the location of the improvement had petitioned for the project. Consequently, the court found that the Council's 5–2 vote ordering the public improvements was insufficient because the project was an "unpetitioned" project, requiring a vote of four-fifths of the council. Accordingly, the trial court ordered the city to remit to the Nastroms any amounts they had paid on the lots in question.

The improvement project, meanwhile, has long since been completed. The City of Blaine appeals.

## ISSUES

I. Did the trial court err in determining that the Nastroms' challenge to the suffi-

ciency of the petition was timely under Minn.Stat. § 429.036 (1988)?

II. Was Project 87–11 an unpetitioned project requiring a four-fifths vote of the council?

    A. Was the city required to determine the requisite percentage of land represented in a consolidated project?

    B. Did the city's failure to pass a resolution determining the percentage of land in Project 87–11 justify invalidating the assessments?

    C. Did owners of the required percentage of land in Project 87–11 petition for the improvement?

    D. Was the city required to present evidence to satisfy the statutory standard of "property abutting streets named in the petition?"

## DISCUSSION

■ This court may reverse a trial court's findings of fact only if the findings are clearly erroneous. Minn.R.Civ.P. 52.01. This court may independently review the trial court's rulings on questions of law. *See Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984). In actions contesting an assessment, a municipality is presumed to have set the assessment legally until proved otherwise. *Tri–State Land Co. v. City of Shoreview,* 290 N.W.2d 775, 777 (Minn.1980).

The city makes essentially two arguments: (1) the Nastroms failed to allege procedural failures in a timely manner; and (2) the trial court erred in concluding that the city's failure to comply with statutory procedures rendered the assessments invalid. We disagree with the city on the first issue but agree with it on the second.

This matter involves three categories of improvements in the Minnesota Statutes: (1) "unpetitioned" improvements initiated by a municipality; (2) improvement petitions initiated by owners of at least 35 percent of land abutting streets named in the petitions ("35 percent" petitions); and

(3) improvement petitions initiated by all owners of land affected by improvements ("all owners" petitions).[1] *See* Minn.Stat. § 429.031, subds. 1, 3 (1988). Each category requires somewhat different procedures for authorizing improvements, including, for example, a different number of votes required for Council approval.

For unpetitioned improvements, which are initiated by a municipality, four fifths of all council members must vote to order the improvement. Minn.Stat. § 429.031, subd. 1. For "35 percent" petitions, a majority vote of the council is required, and for an "all owners" petition, a majority vote suffices. Minn.Stat. § 429.031, subds. 1, 3. The difference in the voting requirement presumably reflects the legislature's concern that the smaller the proportion of landowners involved in requesting an improvement, the more caution a municipality must exercise in ordering the improvements.

This dispute arises because at one time or another, Project 87–11 has fit into all three categories: it was originally an unpetitioned project initiated by the city; then three landowners submitted "all owners" petitions; and, finally, the combined petition was considered by the city to be a "35 percent" petition. The parties essentially dispute the classification of Project 87–11.

### I. Timeliness

■ The city argues the Nastroms waited too long to challenge deficiencies in the Project 87–11 petition and the Council vote on the project. Specifically, the city argues the trial court erred in permitting them to raise this issue for the first time on the day of trial. The city also argues they are barred by statute and by laches from raising this issue long after the Council had ordered the improvements. The trial court concluded the Nastroms were not barred from challenging the city's failure to comply with the statute. We agree.

Until the morning of trial, the city was unaware the Nastroms planned to chal-

---

1. Note that the categories are not named as such in the statute but, rather, have been assigned names for convenience.

lenge the Council vote and the adequacy of the Project 87–11 petition. The issue of procedural defects was raised in only a general way in the complaint. Furthermore, their answers to the city's interrogatories did not specify any deficiency in the Council vote or in the Project 87–11 petition. Consequently, there is no question the city was faced with a difficult task in having this issue thrust upon it at so late an hour.

The fault, however, is as much the city's as the Nastroms'. The city left landowners without a triggering event to begin the running of the limitations period for challenging procedural defects in the approval of Project 87–11. The triggering event would have been the Council's passage of a resolution determining the percentage of land represented in a petition, as required by Minn.Stat. § 429.035. After passage of such a resolution, a landowner has 30 days to challenge the sufficiency of the petition. Minn.Stat. § 429.036.

The Council passed the appropriate resolutions for the individual landowners' petitions. However, it failed to pass a resolution determining the percentage of owners of land affected by the consolidated petition for Project 87–11. Therefore, the 30-day period for challenging a consolidated petition never properly began to run. The city argues that the Nastroms could have challenged the lack of a petition and the insufficiency of the vote for Project 87–11 following the Council's December 1988 resolution ordering the improvements.

We acknowledge this is a close question with strong arguments on both sides. In view of the somewhat convoluted proceedings, however, we conclude that the trial court did not make an error of law in determining that the Nastroms' appeal was timely.

## II. Classification of Project 87–11

The city argues that even if the Nastroms' appeal is timely, any errors in ordering the improvements were harmless, and therefore invalidation of the assessments was unjustified. We agree.

As noted earlier, the parties dispute the classification for the consolidated project.

The problem arose because the city did not pass a resolution determining the classification of Project 87–11, although it had passed resolutions on the individual "all owners" petitions. The city proceeded on the assumption that the consolidated Project 87–11 constituted a "35 percent" project.

### A. Determining percentage in consolidated project

■ The statute requires municipalities to determine the percentage of land represented in a petition:

When any petition for the making of any improvement in any statutory city * * * for the cost of which special assessments may be, in whole or in part, levied therefor, is presented to the governing body of the municipality, this body shall, by resolution, determine whether or not the petition has been signed by the required percentage of owners of property affected thereby.

Minn.Stat. § 429.035.

The city passed the requisite resolution for the individual "all owners" petitions, but passed no such resolution for the consolidated project. No new petition was filed for the consolidated Project 87–11, but we conclude that no new petition was required under the statute.

The statute permits consolidation of petitions:

An improvement on two or more streets or two or more types of improvement in or on the same street or streets or different streets may be included in one proceeding and conducted as one improvement.

Minn.Stat. § 429.021, subd. 2.

■ It is undisputed that the city consolidated the petitions properly. This provision does not explicitly require the filing of a new petition, and we cannot read such a requirement into the statute. It is undisputed that the city failed to determine the percentage of land represented in Project 87–11, as required by Minn.Stat. § 429.035. Because the city did not make this determi-

nation, it failed to comply strictly with the statute.

### B. Strict or substantial compliance with statute

■ Assuming the required percentage of land in the petitions in fact existed, we hold the city's deviations from Chapter 429 are minor and therefore not fatal. Generally, in ordering improvements, only substantial compliance with the statute is necessary. *See Rhodenbaugh v. City of Bayport,* 450 N.W.2d 608, 612 (Minn.App. 1990), *pet. for rev. denied* (Minn. Mar. 16, 1990) (quoting 14 E. McQuillin, *Law of Municipal Corporations,* § 31.175 (3d ed. 1987)). In particular, failure to comply with directory, as opposed to mandatory, provisions is generally not fatal. *Id.* "A statute that does not declare the consequences for failure to comply with a requirement is generally held to be directive, not mandatory." *In re Eigenheer,* 453 N.W.2d 349, 354 (Minn.App.1990). Since Minn.Stat. § 429.035 provides no penalty for failure to comply, it is directory, not mandatory. Consequently, the city's failure to comply with this provision is not fatal.

■ Furthermore, a municipality's failure to comply with statutory provisions is not fatal if the result causes no injury or prejudice to the landowner. *Rhodenbaugh,* 450 N.W.2d at 612. In *Rhodenbaugh,* for example, a municipality had approved an improvement without adopting a resolution determining that owners of affected property had petitioned for the improvement, as required by Minn.Stat. § 429.035. We held, however, that this defect was minor because the property owners were aware of the city council's actions and therefore were not prejudiced.

Similarly, there is no evidence of prejudice to the Nastroms. As the trial court correctly found, the city complied with provisions on mailing and publication of notice of hearing on the consolidated improvement as required by the statute. The Nastroms knew early on that their land was affected by the project, and they had ample opportunity to oppose it. Indeed, they took full advantage of their opportunities to be heard; they appeared at hearings and filed written objections to the Council.

Had the city passed the required resolution, the result probably would have remained the same. The Nastroms would have received no further benefit, no increased chance of preventing the improvements, and the resolution would have triggered the 30–day limitation period for appealing the designation of the petition. Thus, the failure to pass a resolution formally determining the requisite percentage of land did not injure or prejudice the Nastroms in any way. We conclude that the city's deviations from Chapter 429 were minor.

We point out, however, that it would be far more orderly for municipalities to make such determinations to provide a triggering event for the 30–day limitation period for challenging a consolidated petition and prevent costly disputes such as this.

### C. Percentage of petitioned-for land in Project 87–11

■ If a city council fails to pass a resolution on the percentage of land petitioned for, it must show that *in fact* owners of the requisite percentage of land petitioned for improvements. We believe the evidence shows this required percentage existed.

The record does not disclose whether the council discussed the percentage of land in the consolidated petition. Other evidence, however, shows that more than 35 percent of benefited land was represented in the individual petitions. The city engineer, Charles Lenthe, testified that owners of 48 percent of land benefiting from the improvement petitioned for the project. Furthermore, a map of the project, on its face, indicates approximately one half of the land in the area of the improvements is owned by the three who petitioned for the improvements.

### D. Land abutting streets to be improved

■ The Nastroms, however, accurately note the statute requires a determination

of the percentage of land *abutting streets to be improved,* not of land *benefiting from the improvement,* and that, therefore, Lenthe's testimony fails to address the statutory language. Indeed, the trial court correctly found there was no evidence of the percentage of land *abutting streets* named in the petition.

The statute provides that improvements may be adopted

> by vote of a majority of all members of the council when the improvement has been petitioned for by the owners of not less than 35 percent *in frontage of the real property abutting on the streets named in the petition* as the location of the improvement.

Minn.Stat. § 429.031, subd. 1 (emphasis supplied).

The city concedes it did not present evidence of property abutting streets named in the petition, but argues it could not have done so because the project involved relocation of existing streets and construction of new ones. They urge that the nature of such an improvement rendered the statutory language a meaningless technicality.

Again, while a close question, we conclude that reasoned statutory interpretation makes it necessary to disregard the explicit language of the statute as applied to such improvements. The purpose of naming streets in petitions for improvements is to give notice to landowners of proposed improvements. It is the notice of location of the improvement that is important, not the means of identifying the location.

Moreover, except for the provision cited above, we found no other provision in Chapter 429 requiring the naming of streets in petitions for improvements. We note "the legislature does not intend a result that is absurd, impossible of execution, or unreasonable" but, rather, it "intends the entire statute to be effective and certain." Minn.Stat. § 645.17(1), (2) (1988). In this case, following the statutory standard of the percentage of "property abut-

ting streets" would have been an impossibility and an absurdity. Instead, applying a standard of percentage of property *benefiting from* the improvement better fit the statutory purpose of giving landowners notice of proposed improvements in their area.[2] The notice of the December 1988 hearing to consider the improvement provided a legal description and included a map. This notice provided sufficient information to landowners affected by the improvement. The Nastroms do not claim they did not receive notice.

It is also apparent that, had the city followed the statutory language strictly, the naming of relocated and new streets might actually have misled landowners into believing their properties were not affected by the project.

We hold that more than 35 percent of property benefiting from the improvement was included in the petitions by landowners, and therefore the consolidated project became a "35 percent" petition, requiring only a majority vote of the Council. Accordingly, the trial court erred in concluding that the city's failure to comply with Minn.Stat. § 429.031, subd. 1, was a jurisdictional defect invalidating the assessments.

### DECISION

We reverse the trial court's conclusion that the assessments are invalid and remand to the trial court for a decision on the Nastrom's appeal regarding the amount of the assessments and of any other remaining issues.

Affirmed in part, reversed in part, and remanded.

---

2. The trial court did not reach the Nastroms' claim that the assessment of benefits to their property was excessive.