Dennis NASTROM, et al., Petitioners,
Appellants,

v.

CITY OF BLAINE, Respondent.

No. C6–92–1806.

Supreme Court of Minnesota.

April 15, 1994.

Felix A. Mannella, Babcock, Locher, Neilson & Mannella, Anoka, for appellants.

Paul T. Ostrow, Sweeney, Borer & Ostrow, St. Paul, for respondent.

## OPINION

COYNE, Justice.

On the petition of Dennis and Char Nastrom we review a decision of the court of

appeals, *Nastrom v. City of Blaine,* 498 N.W.2d 495 (Minn.App. 1993), which reversed the trial court's determination that the City of Blaine had improperly levied special assessments against the Nastroms' property described as Lots 4, 5, 6, and 7, Block 1, Autumn Oaks, in Anoka County, Minnesota. The crux of the matter lies in the required vote for a resolution ordering improvements. Although the trial judge found that acceptance of a feasibility report operated as a joinder of three petitioned improvement projects into a larger unpetitioned project, he concluded that the city had not complied with Minn.Stat. § 429.031, subd. 1 (1992), which requires a vote of four-fifths of all the members of the city council, and that a vote of five to two was insufficient to order the combined improvement project. The trial court ruled that the insufficiency of the vote ordering the improvement made the special assessments levied against Lots 4 through 7, Block 1, Autumn Oaks, improper. On appeal the court of appeals regarded the statutory requirements as merely directory. Declaring that noncompliance was not prejudicial to the Nastroms and finding that the city was entitled to treat the three petitions before it as a combined "35 percent" petition subject to approval by a simple majority of the council members, the court of appeals reversed. We reverse and reinstate the judgment of the trial court.

Since 1978 the Nastroms have maintained their residence on a five-acre tract of land in the City of Blaine. When the Nastroms acquired the land it was "all wooded" and served by a dirt road. Cloud Drive bordered part of the land on the north; 118th Avenue formed the southerly border; and Davenport Street abutted the property on the west. Although the Nastroms had not planned to sell any of their land, eventually they joined the Monsons, their neighbors on the east, in platting their properties as Autumn Oaks, a plat of 15 lots; lots 4 through 12 of Autumn Oaks belong to the Nastroms.

In 1987 the City of Blaine considered improving Cloud Drive "to a[n] MSA [Municipal State Aid] standard [with] bituminous paving [and] concrete curbs and gutters." The proposal, called Project 87–11,[1] was not a project requested by local landowners; the city itself had initiated it. Because Improvement Project 87–11 had not been "petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement," a vote of four-fifths of all the members of the city council was required for the adoption of a resolution ordering Improvement Project 87–11. Minn.Stat. § 429.031, subd. 1.[2] The city council decided, however, not to proceed with Project 87–11 as it was then contemplated.

On December 17, 1987, Gaughan Land, Incorporated, filed a petition for the improvement of land described as Olympic Glen Addition; and on April 12, 1988, two other petitions for improvements were filed with the city council: one by Mark Freundschuh for Nu–Life Estates and the other by James Lund Construction, Inc., for Aberdeen Oaks. Each of these petitions described a proposed subdivision of undeveloped land, and, as the basis for the requested waiver of a public

1.  Improvement projects are identified by two hyphenated numbers: the first designates the year in which the project originated and the second identifies the specific project. Project 87–11 was the eleventh project initiated in the year 1987.

2.  After providing for notice and hearing and after permitting the council to take steps it believes may be helpful in "determining the desirability and feasibility of the improvement," Minn.Stat. § 429.031, subd. 1 (1992) sets out the requirements for a resolution ordering the improvement:

The hearing may be adjourned from time to time and a resolution ordering the improvement may be adopted at any time within six months after the date of the hearing by vote of a majority of all members of the council when

the improvement has been petitioned for by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement. When there has been no such petition, the resolution may be adopted only by vote of four-fifths of all members of the council; provided that if the mayor of the municipality is a member of the council but has no vote or votes only in case of a tie, the mayor shall not be deemed to be a member for the purpose of determining such four-fifths majority vote. The resolution ordering the improvement may reduce, but not increase the extent of the improvement as stated in the notice of hearing.

hearing, each petition asserted that the petitioner was the 100 percent owner of the property to be improved and that the petition was made pursuant to Minn.Stat. § 429.031, subd. 3, which provides that the cost of the requested improvement will be assessed against the petitioner's property.

From Highway 65 on the west, Cloud Drive runs generally northeasterly to Radisson Road on the east. Aberdeen Oaks is a triangular tract which lies immediately east of Highway 65 and west and south of the Nastroms' property in Autumn Oaks.[3] The hypotenuse of the triangle which is the northwesterly boundary of Aberdeen Oaks abuts Cloud Drive. Nu–Life Estates lies north of the Nastroms' property and is bounded on the south by Cloud Drive. The easterly boundary of Nu–Life Estates and the westerly boundary of the northerly portion of Olympic Glen are contiguous, and Cloud Drive continues in a northeasterly direction all the way across Olympic Glen. The north boundary of Nu–Life Estates, extended easterly, forms the north boundary of Olympic Glen, a basically rectangular tract which is the largest of the three proposed subdivisions. Olympic Glen extends as far to the south as the southerly boundary of Aberdeen Oaks, which is separated from the other two proposed subdivisions by Autumn Oaks and other land.

Initially, the City seemed prepared to proceed pursuant to Minn.Stat. § 429.031, subd. 3.[4] On April 21, 1988 the city council adopted a resolution declaring the adequacy of the petition for Improvement Project 88–08, Aberdeen Oaks; a resolution declaring the adequacy of the petition for Improvement Project 88–09, Nu–Life Estates; and a third resolution declaring the adequacy of the petition for Improvement Project 88–10, Olympic Glen Addition. The council did not, however, complete the resolution by ordering the improvement as provided in subdivision 3. Rather, each resolution referred the proposed improvement to an engineering firm for preparation of a feasibility report and required the developer of each subdivision to post security sufficient to cover the cost of the feasibility report for the developer's project.

Although Minn.Stat. § 429.031, subd. 3 does not require a feasibility report when improvements are ordered on petitions by all owners, it may be that the substantial cost of the improvements proposed by these three petitions prompted the council to seek advice concerning both feasibility and estimated cost. An engineer who prepares a feasibility report required for an improvement proposed without any petition or by petition of less than all owners of real property abutting the streets named in the petition is instructed by Minn.Stat. § 429.031, subd. 1 to advise the council "in a preliminary way as to whether the proposed improvement is feasible and as to whether it should best be made as proposed or in connection with some other improvement and the estimated cost of the improvement as recommended * * * *"

Here, the engineers appear to have observed the statutory directive. Although each of the three resolutions of April 21, 1988 describes only one proposed subdivision and apparently contemplates a separate feasibility study for each subdivision, the engineers considered all three projects together because they were generally related in common

---

**3.** In view of the similarity of the legal description of the Nastroms' land and the name of one of the proposed subdivisions, it may be helpful to note here that "Autumn Oaks", in which the Nastroms' lots lie, and "Aberdeen Oaks", one of the proposed subdivisions, are discrete parcels of land. James Lund Construction, Inc., the sole owner of Aberdeen Oaks, petitioned for improvement of its property. There was no petition for improvement of Autumn Oaks and, in fact, the Nastroms have from the beginning objected to the improvement which precipitated the condemnation of part of their land and the special assessment levied against Lots 4, 5, 6, and 7, Block 1, Autumn Oaks.

**4.** Minn.Stat. § 429.031, subd. 3 (1992), which sets out the format for ordering local improvements on petition by all owners, provides in pertinent part:

Whenever all owners of real property abutting upon any street named as the location of any improvement shall petition the council to construct the improvement and to assess the entire cost against their property, the council may, without a public hearing, adopt a resolution determining such fact and ordering the improvement.

considerations. However, the feasibility report was not confined to the improvement of the three described subdivisions. In addition to the street, watermain, storm drainage, and sanitary sewer construction requested by the petitions, the feasibility report provided for the reconstruction of Cloud Drive and the construction of a new street called 119th Avenue Northeast, most of which traversed or abutted land belonging to persons other than the petitioners. Moreover, the feasibility report provided for the construction of systems of watermains, sanitary and storm sewers which extended well beyond the three proposed subdivisions—Olympic Glen, Nu–Life Estates and Aberdeen Oaks—even though the report was entitled

"Blaine, Minnesota
Feasibility Report
for
Aberdeen Oaks
City Project No. 88–08
Nu–Life Estates
City Project No. 88–09
Olympic Glen
City Project No. 88–10."

In short, the engineers' recommendation was not merely to combine the improvements proposed in the three projects for which the report was entitled. By incorporating in the feasibility report the reconstruction of Cloud Drive, the construction of a new MSA road to be called 119th Avenue N.E., and the construction of accompanying water, sanitary and drainage systems, the recommendation to the council was that the improvements proposed as Projects 88–08, 88–09, and 88–10 should be made in connection with some other improvement—that is, with what appears to be a variant of the Improvement Project 87–11 contemplated but rejected a year earlier.

The trial court found that acceptance of the feasibility report operated as a joinder of Improvement Projects 88–08, 88–09, and 88–10 into Improvement Project 87–11, an improvement project which included the property of the Nastroms and others who did not join in any petition for improvements. The resolution of November 17, 1988 accepting the feasibility report refers to the city engineer's determination that the improvement, if ordered, should be designed and awarded as a single construction contract. The resolution states that the city council would consider the improvement in accordance with the report and the assessment of benefitting property for all or a portion of the cost of the improvement. Finally, the resolution calls for notice and public hearing, neither of which would have been required had the proceeding been confined to improvement of the three proposed subdivisions. Although the resolution plainly provided for a consideration of more than the improvements requested in the petition for Improvement Projects 88–08, 88–09, and 88–10 and, hence, could be characterized as a resolution combining improvements so that they could be conducted as one improvement, pursuant to Minn.Stat. § 429.021, subd. 2 (1992), the resolution does not mention or even refer obliquely to Improvement Project 87–11. Like the resolution directing publication of notice, the notice refers only to Improvement Projects 88–08, 88–09, and 88–10 and names the three proposed subdivisions; it does not, however, mention Improvement Project 87–11.[5] Moreover, it is clear from the city engineer's description of Improvement Project 87–11 that the project under consideration in 1988 differed significantly from Project 87–11 as it was originally conceived. *That* project called for upgrading of Cloud Drive to an MSA standard, but the plan *adopted* interrupted Cloud Drive where it traversed Olympic Glen and called for the construction of a new street, 119th Avenue N.E., as the MSA road.

On December 15, 1988, by a vote of five to two, the city council adopted Resolution No. 88–335, "Ordering the Improvement and Preparation of Plans and Specifications for Improvement Project No. 88–08, 88–09, & 88–10, Aberdeen Oaks, Nu–Life Estates & Olympic Glen."

---

5. Inasmuch as the published notice stated that the cost of the improvement would be assessed against property lying within an area larger than the named subdivisions, we are of the opinion that the reference to only the petitioned portions of the improvement under consideration should not be taken as suggestive of a sinister purpose.

At some unidentified time before June, 1989, however, some unidentified hand bracketed the title of the feasibility report, penned "87–11" alongside, and lightly struck out the numbers 88–08, 88–09 and 88–10. Subsequently, all references to the work were to "Improvement Project No. 87–11." Thus, the June 1, 1989 resolutions accepting bids and ordering publication of notice refer to Project 87–11. By resolution of May 3, 1990, the council approved the plans and bids for Improvement Project No. 87–11, the "Construction of Streets, Sanitary Sewer, Watermain, Storm Drainage and Appurtenances for 119th Avenue/Cloud Drive Area."

■ The titles of the December 15, 1988 resolution "Ordering the Improvement and Preparation of Plans and Specifications for Improvement Project No. 88–08, 88–09, and 88–10, Aberdeen Oaks, Nu–Life Estates & Olympic Glen" and the resolution of May 3, 1990 approving the plans and bids for Improvement Project No. 87–11, "Construction of Streets, Sanitary Sewer, Watermain, Storm Drainage and Appurtenances for 119th Avenue/Cloud Drive Area" obviously describe different projects of a quite different scope. Of course, Minn.Stat. § 429.021, subd. 2 authorizes a municipal council to combine improvements:

> An improvement on two or more streets or two or more types of improvement in or on the same street or streets or different streets may be included in one proceeding and conducted as one improvement.

Although the foregoing statute undoubtedly authorized the combination of the *improvements requested* in the petitions for Improvement Projects 88–08, 88–09, and 88–10, with the additional improvement described and recommended in the feasibility report, nothing in Minn.Stat. chap. 429 authorizes the combination of *petitions* for improvements, much less the metamorphosis of the three 100 percent petitions requesting improvement of their respective wholly owned properties into a single petition "by the owners of not less than 35 percent in frontage of the real property abutting on the streets named in the petition as the location of the improvement" including both property not owned by the original petitioners and improvements

not requested by them. The trial court determined only that the petitioned improvement projects had been combined with Improvement Project 87–11. While acknowledging that the ultimate project represented the consolidation of four separate improvement projects, the court of appeals looked on the acceptance of the feasibility report and direction for notice and hearing as a consolidation of the three individual petitions into a nonexistent petition by 35 percent of the owners of unnamed streets.

From a practical standpoint it may have been eminently sensible to coordinate plans and specifications for the improvement of the three proposed subdivisions with plans and specifications for an upgraded thoroughfare between Highway 65 and Radisson Road in anticipation of the increased population density which would attend the development of Aberdeen Oaks, Nu–Life Estates and Olympic Glen. Nevertheless, the engineers' recommendation in the feasibility report was not a property owners' petition for improvement. Neither could the council's acceptance of the feasibility report cause the unpetitioned improvement to come under the aegis of the petitioned improvements because the unpetitioned improvement lay outside the real property owned by each petitioner.

■ Under the particular circumstances, if the City of Blaine intended to assess the cost of the entire improvement against all benefitted property, a resolution ordering that improvement and adopted by vote of four-fifths of all members of the council was required. Although the city council could have ordered the improvement requested in each of the three 100 percent petitions by a vote of five to two, that vote was inadequate for the ordering of an improvement which had never been petitioned, that portion of the improvement which lay outside Aberdeen Oaks, Nu–Life Estates, and Olympic Glen. We do not regard the specific statutory requirement that absent a petition submitted by owners of at least 35 percent of the abutting property, "the resolution may be adopted only by vote of four-fifths of all members of the council" to be merely directory. Neither do we regard failure to comply with that requirement a minor

deviation or unimportant. Finally, inasmuch as there never was a petition for all the work included in what came to be identified as Project 87–11, the proceeding here can hardly be said to have amounted to substantial compliance.

It has been observed that courts generally enforce the rule that in making local improvements for the cost of which special assessments are to be levied, the procedure prescribed must be strictly observed in good faith and in all material respects. 14 Eugene McQuillin, Municipal Corporations § 38.177 (1987). Although this court has not in modern times had occasion to construe the statutes in issue here, historically we have strictly construed statutes affecting property rights. *Cf. Bowen v. City of Minneapolis,* 47 Minn. 115, 49 N.W. 683 (1891). It is conceded that the proceedings here did not strictly adhere to the statutory requirements, and although we do not doubt that all concerned acted in good faith, there can be no doubt that a vote which does not meet statutory requirements must be deemed a material defect.

Reversed; judgment of the trial court reinstated.

