SOUTHVIEW COUNTRY CLUB, a Partnership Composed of Donald C. Lentsch, Herbert T. Lentsch, Frank J. Lentsch, Eugene J. Lentsch, Lawrence M. O'Shaughnessy, Robert A. Casper, Harry H. Kirby and Samuel W. Hunter, Appellant,

v.

CITY OF INVER GROVE HEIGHTS, DAKOTA COUNTY, Minnesota, Respondent.

No. 47225.

Supreme Court of Minnesota.

Jan. 27, 1978.

---

William R. Busch, St. Paul, for appellant.

LeVander, Gillen, Miller & Magnuson, Paul A. Magnuson and Timothy J. Kuntz, South St. Paul, for respondent.

Heard before SHERAN, C. J., ROGOSHESKE and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

This is an appeal from a district court judgment affirming the validity of water and sewer main assessments levied by respondent against appellant, and from an order denying appellant's motion for a new trial. Because appellant did not derive special benefits from the projects which gave rise to these assessments, we reverse.

These assessments were levied on August 26, 1975, to pay portions of the cost of City Project 580, a water main improvement, and City Project 582, a sewer main extension. The subject land consists of two

tracts in Inver Grove Heights which, taken together, comprise 40 acres.[1]

Parcel A, 27.36 acres lying just south of and abutting on Mendota Road, contains the practice range and five of the eighteen holes of the Southview Country Club. This parcel has been part of the golf course since 1925. Parcel B, 12.64 acres, borders on Parcel A but is not part of the golf course. Parcel B would be landlocked but for a triangular spur that juts out of its northeast corner and provides 247.5 feet of frontage on Babcock Trail just south of the point at which Babcock Trail runs diagonally into Mendota Road.

Project 580 is a 12-inch water main running along Mendota Road from Babcock Trail to Robert Street, that is, along 1287 feet of the north side of Parcel A. Appellant was assessed $13,835.25 for this frontage, and a $17,066.50 "area assessment" for 31.03 acres of Parcels A and B. Of the combined parcels 8.97 acres were not assessed because they are natural lakes.

Project 582 is an extension of an 8-inch sanitary sewer line from its previous end point in Parcel A. One hundred fifty feet of this extension pass through the subject land, but because respondent treated Parcel A as a corner lot, appellant was assessed for only 60 feet. Accordingly, the amount of the Project 582 assessment was $685.20.

These special assessments were levied, pursuant to Minn.St. 429.051, on a quarter of a quarter section of land which has as its northern boundary Mendota Road, and, as its eastern boundary, a line beginning at the intersection of Mendota Road and Babcock Trail and running south perpendicular to Mendota Road. The consequences of using these assessment-area boundaries were that Parcel A was assessed in isolation from the rest of the golf course, which lies north of Mendota Road; and, further, that the existence of the triangular spur which gives Parcel B access to sewer and water mains in Babcock Trail was disregarded.

The trial court, which found that the two parcels had increased in value by $45,000 as a result of Projects 580 and 582, held that any of appellant's land which was not included on the city's assessment rolls for these two projects was irrelevant to its proceedings. By so doing, the court incorporated into its findings the improperly supported opinions of respondent's expert witness on real estate value. This appraiser testified that, when he determined the value of Parcel A, he had not considered what effects its development would have on the remainder of the golf course. The same expert testified that he was not aware at the time of his appraisal that Parcel B had frontage on Babcock Trail. We hold that affirmance of the assessments based on the "special benefits" thus determined was clearly erroneous under the standard set by Rule 52.01, Rules of Civil Procedure, and *In re Estate of Balafas,* 293 Minn. 94, 198 N.W.2d 260 (1972).[2]

In *Carlson-Lang Realty Co. v. City of Windom,* 307 Minn. 368, 369, 240 N.W.2d 517, 519 (1976), we reviewed the limitations on the power of special assessment as follows:

" * * * (a) The land must receive a special benefit from the improvement being constructed, (b) the assessment must be uniform upon the same class of property, and (c) the assessment may not exceed the special benefit. * * * Special benefit is measured by the increase in

---

1. Appellant is contract vendor of one of the two tracts, referred to as "Parcel A," and is bound by the contract with its vendees to pay these assessments, if valid. Appellant is also contract vendee of a 69/100 interest in "Parcel B;" the owner of the remaining 31/100 has agreed that his liability for these assessments will be determined by the present litigation.

2. Under the standard stated in *In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972), "even though there is evidence to support a finding, the finding can be held to be clearly erroneous if 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" This rule has been approved repeatedly, most recently in *In re Trust Known as Great Northern Iron Ore Properties,* 308 Minn. 221, 225, 243 N.W.2d 302, 305, certiorari denied sub nom. *Arms v. Watson,* 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976).

the market value of the land owing to the improvement. *Quality Homes, Inc. v. Village of New Brighton,* 289 Minn. 274, 183 N.W.2d 555 (1971) * * *."

Any special assessment which does not meet these requirements is an unconstitutional taking without compensation. *In re Improvement of Superior Street,* Duluth, 172 Minn. 554, 559, 216 N.W. 318, 320 (1927).

With respect to Parcel B, the evidence shows that even if this presently undeveloped land were to be developed to the extent permitted by the zoning laws, the water and sewer mains which now exist in Babcock Trail would meet its needs. Thus Projects 580 and 582 conferred no special benefits on this land. The situation here is similar to that presented in *Independent School District No. 709 v. City of Duluth,* 287 Minn. 200, 177 N.W.2d 812 (1970), where we held that "if existing sewers are adequate, no assessment can be made for the construction of a sewer." 287 Minn. 204, 177 N.W.2d 815.

■ The issue Parcel A presents is somewhat more complex. This land is served by pipes from two wells elsewhere on the golf course which provide sufficient water for its present needs. Present use of land is not, however, the controlling factor in determining whether it has received special benefits. Rather, the test is whether the land could be used for purposes which would benefit from the improvement. *Village of Edina v. Joseph,* 264 Minn. 84, 95, 119 N.W.2d 809, 817 (1962). If Parcel A were an isolated tract, freely developable, it would clearly benefit from Projects 580 and 582.

Parcel A is, however, an integral part of a golf course. It could not be developed without destroying the function of approximately 90 additional acres owned by appellant, constituting the 13 holes which are not part of Parcel A. The trial court's judgment, predicated on the idea that Parcel A was available for other uses, did not give proper weight to the value of appellant's property as a total holding with a unique purpose which thus precludes piecemeal development.[3]

■ A persuasive analogy is to be found in the area of eminent domain.[4] There we have held that where a part of a unitary tract is taken, its owner must be compensated for consequential damages to the extent that the market value of the remaining part is diminished. *Victor Company, Inc. v. State, by Head,* 290 Minn. 40, 186 N.W.2d 168 (1971). To establish a claim for such damages, it must be shown that "the land taken and the owner's remaining land possess special adaptability for a particular unitary use and were actually and permanently put to such use, and that a taking of one tract resulted in damage to the tract remaining." 290 Minn. 44, 186 N.W.2d 171. A similar rule should apply to the determination of market value for assessment purposes; that is, where an assessment is levied on part of a landholding which is devoted as a totality to some specific use, the inquiry into whether the portion assessed has increased in value must take into account the function of that portion as part of the whole.[5] Otherwise, the increased value of the assessed portion may not represent a "benefit," as required by the statute and by Minn.Const. art. X, § 1. Such was the case here. Failure to consider the interrelationships of appellant's land resulted in the affirmance of assessments for

---

**3.** The trial court found that "the highest and best use of the land is for single family residential or multiple residential use." While this would indeed be the case if the land were not part of the golf course, to convert it to such use at present could cause appellant up to $250,000 in consequential damages since the value of appellant's holdings north of Mendota Road would be seriously diminished as would that of the golf course clubhouse.

**4.** This court held in *City of St. Louis Park v. Engell,* 283 Minn. 309, 316, 168 N.W.2d 3, 8 (1969), that special benefits in both eminent domain and assessment cases should be evaluated by the same process.

**5.** If the property had been appraised for general, ad valorem tax purposes rather than a special assessment, the assessor would have been obliged to consider its unique character as a golf course. See, Minn.St. 273.112.

two projects which in fact conferred no benefits on appellant.

Reversed.

OTIS and KELLY, JJ., took no part in the consideration or decision of this case.