**TRI–STATE LAND COMPANY, Appellant,**

v.

**CITY OF SHOREVIEW, Respondent.**

No. 49874.

Supreme Court of Minnesota.

March 28, 1980.

Wayne C. Serkland, Minneapolis, for appellant.

Jerome P. Filla, St. Paul, for respondent.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc.

## OPINION

ROGOSHESKE, Justice.

Tri-State Land Company (Tri-State) appeals from a judgment of the district court dismissing its action contesting a special assessment for a storm sewer project levied by the City of Shoreview against Tri-State's land.[1] The principal issue raised is whether Tri-State was entitled to an independent review by the trial court of its claim that the assessment exceeded the special benefits to its property from the construction of the storm sewer project. We hold that under *Buettner v. City of St. Cloud*, 277 N.W.2d 199 (Minn.1979), issued after the trial court's decision in this case, the trial court erred in not affording Tri-State a *de novo* or independent review of its claim. Accordingly, we are compelled to reverse and remand.

Tri-State is the fee owner of 417.88 acres of land within the City of Shoreview in an area known as the Healy Industrial Area. In 1976 construction was completed on a storm sewer project which served several parcels within the Healy Industrial Area, including Tri-State's. As the storm sewer neared completion, the city began to consider the assessment of project costs. A professional real estate appraiser was hired to advise the city of the expected benefits to the parcels served by the storm sewer. Upon receipt of the appraiser's report, the Shoreview City Council ordered the preparation of an assessment roll for the storm sewer based upon the report. The proposed assessment for Tri-State's property was $332,653.72. On September 7, 1976, a public hearing on the proposed assessment was held, and Tri-State and other affected property owners objected to the assessment. On September 20, 1976, the city adopted the assessment as proposed. Tri-State then filed a notice of appeal to the district court.

---

1. Property owners who are aggrieved by an assessment are entitled under Minn.Stat. § 429.081 (1978) to appeal the assessment to the district court.

During the processing of Tri-State's appeal, it was discovered that the city had failed to credit amounts collected from Ramsey County for benefits to county roads from the sewer against the costs of the project. A reassessment hearing was held on May 8, 1978, to correct this oversight. In addition to the Ramsey County payment, project costs which had been incurred since adoption of the original assessment roll were considered by the city. Prior to the reassessment hearing, Tri-State submitted an appraisal of the subject property prepared by a professional land appraiser, which appraisal was reviewed by the city. On May 15, 1978, the reassessment roll was adopted and Tri-State was assessed $326,-274.31, or $6,717.61 per acre. All other properties were assessed at less than $2,700 per acre. Tri-State filed a notice of appeal from the reassessment roll, and that appeal was joined for trial with the appeal from the original assessment.

 Municipalities are authorized by statute to make local improvements and to assess properties benefited by such improvements. Minn.Stat. §§ 429.021 and 429.051 (1978). This court has established guidelines for special assessments:

(a) The land must receive a special benefit from the improvement being constructed, (b) the assessment must be uniform upon the same class of property, and (c) the assessment may not exceed the special benefit. * * * Special benefit is measured by the increase in the market value of the land owing to the improvement. * * *

* * * If the assessment is set higher than the special benefit conferred, it is a taking without compensation to the extent of the excess.

*Carlson-Lang Realty Co. v. City of Windom*, 307 Minn. 368, 369–70, 240 N.W.2d 517, 519 (1976). In an action contesting an assessment, the city is presumed to have set the assessment legally until it is proven to the contrary. Thus, "introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed special benefit. [The contesting party] may, however, overcome the presumption by introducing competent evidence that the assessment is greater than the increase in market value of the property due to the improvement." 307 Minn. at 370, 240 N.W.2d at 519–20.

The critical testimony in the present trial was given by professional real estate appraisers called by both parties. While the conclusions of Tri-State's appraisers differed sharply from those of the city's, the trial court found that the evidence reasonably supported the appraisal adopted by the city. In making his decision, the trial judge exercised a narrow scope of review. In his memorandum, he reasoned that "[i]f reasonable men differ as to the amount of benefits conferred by the construction of a certain improvement, the decision of the authority must be sustained, because the apportionment of assessments is a legislative function." The trial court further observed:

It is not the province of the Court to substitute its judgment for that of the body making the decision, but merely to determine whether that body, was within its jurisdiction, was not mistaken as to applicable law, and did not act arbitrarily, oppressively or unreasonably, and to determine whether the evidence could reasonably support or justify the determination.

Our recent decision of *Buettner v. City of St. Cloud*, 277 N.W.2d 199 (Minn.1979), addressed the ambiguity of our prior decisions and clarified the scope of review to be exercised by a trial court in an action contesting a special assessment. There, plaintiff contested a special assessment levied by the City of St. Cloud, alleging that the value of the special benefits conferred on the property by the project was less than the amount of the special assessments levied. The trial court in *Buettner* weighed the conflicting appraisal testimony, substituting its opinion for that of the municipality, and ordered a reassessment and a reduction. We affirmed the trial court's independent review of the assessment evidence, since a constitutional issue of taking with-

out compensation is raised when a special assessment exceeds specific benefits:

> [W]here the sole issue presented is whether there has been an unconstitutional taking, the trial court cannot abrogate its duty to uphold constitutional safeguards and defer to the judgment of the taxing authority. Decision must be based upon independent consideration of all the evidence. * * * The propriety of independent review of this constitutional issue is further indicated by the factors which must be taken into account in making a determination. This is not a question of choosing among a number of reasonable ,alternatives. It is not a policy decision but a specific finding of fact—do the special benefits exceed the assessment figure? There is no need for a court in such a position to depend upon prior administrative determinations to carry out its constitutional responsibility.

277 N.W.2d at 203.[2]

■■ The independent review required of the trial court is not inconsistent with the presumption of validity due a city council's determination of a special assessment. A presumption makes out a prima facie case which is dispositive in the absence of contrary evidence; thus, when the assessed party introduces competent evidence that the assessment is greater than the increase in market value of the property resulting from the improvement, the presumption is overcome and the trial court must make an independent factual determination. In the present case the testimony of Tri-State's professional real estate appraisers was more than sufficient to overcome the city's prima facie case that the assessment did not exceed the special benefit. Under *Buettner*,

therefore, the trial court, rather than deferring to the judgment of the Shoreview City Council, must independently weigh the conflicting evidence presented by the parties on the benefit to Tri-State's property from the storm sewer. Accordingly, we reverse and remand with .instructions to the trial court to make an independent finding on the special benefits issue. In light of this disposition, we need not consider the other issues raised by Tri-State.

Reversed and remanded with instructions.

---

2. The *Buettner* court did adopt some limitations on the trial court's authority to independently review the evidence in special assessment cases, holding that in at least two situations the trial court should give deference to the city council's determination. First, "in cases where the issue presented to the trial court is the regularity of the assessment process or determinations made within the range of the municipality's legislative discretion, * * * the city's conclusions may not be upset unless clearly erroneous." 277 N.W.2d at 203.

Second, even if the contesting party does raise a constitutional issue, the trial court's scope of review may be limited if "the underlying decision-making process is designed to effectively produce a correct or just result or if the decision is informed by considerable expertise." 277 N.W.2d at 204. Because Tri-State is not contesting the regularity of the city council's proceedings and because the assessment was not adopted in an adversary proceeding, neither of the above limitations is applicable in this case.