John W. BUZICK, et al., Appellants,

v.

CITY OF BLAINE, Respondent.

No. CX–92–495.

Court of Appeals of Minnesota.

Nov. 24, 1992.

Review Granted Jan. 28, 1993.

David A. Allgeyer, Helen M. Hughesdon, Lindquist & Vennum, Minneapolis, for appellants.

Paul T. Ostrow, Sweeney, Borer & Ostrow, St. Paul, for respondent.

Considered and decided by HARTEN, P.J., and FORSBERG and SHORT, JJ.

## OPINION

HARTEN, Judge.

Appellants, taxpayers, contest a judgment affirming respondent City of Blaine's special assessment on their property. Appellants contend the evidence does not support the trial court's findings that the property benefits from the improvement, that the assessment does not exceed the increase in value of the property due to the improvement and that the assessment is uniform. Appellants also argue that the trial court erred in refusing to admit their evidence based on the development cost approach to appraisal and in excluding evidence of an alleged conflict of interest on the part of the city manager. We affirm.

## FACTS

Appellants own approximately 26 acres of property which is presently used as a hayfield within respondent's city limits. It is bounded on the west by Central Avenue, also known as Highway No. 65, and on the east by Davenport Street. The Minnesota Amateur Sports Facility, which opened in 1990, is directly across Davenport Street.

Respondent's long-range development plan called for improvement of Davenport Street. The construction of the sports facility advanced the timing of the improvement, however. The improvement included street paving and installation of sewer and water lines.

At a special assessment hearing, appellants objected to a proposed $95,000 assessment on their property for the improvement, payable in ten annual installments. The city council adopted the assessment roll on September 7, 1990. Appellants challenged the assessment in district court. Following a trial to the court, judgment was entered on March 9, 1992 affirming the assessment and awarding costs to respondent.

## ISSUES

1. Does the evidence support the findings that:

(a) the property benefits from the improvement;

(b) the assessment does not exceed the increase in value of the property due to the improvement; and

(c) the assessment is uniform?

2. Did the trial court err in its evidentiary rulings on:

(a) the exclusion of appellants' evidence of value based on the development cost approach to appraisal; and

(b) the exclusion of evidence of an alleged conflict of interest resulting from the city manager having also been the project manager of the sports facility?

## ANALYSIS

■ 1. For a special assessment to stand, it must meet the following guidelines: (1) the land must acquire a special benefit from the improvement; (2) the assessment must not exceed the benefit; and (3) the assessment must be uniform on the same class of property. *Tri–State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 777 (Minn.1980). Appellants argue that the evidence does not support the trial court's findings on the three prongs of *Tri–State*. We disagree.

■ (a) *The finding that the property benefits from the improvement.* Minnesota law provides that:

Benefits from an improvement are calculated * * * based on the highest and best use of the land. Present use of the land is not the controlling factor in determining whether the land has received benefit from the improvement. Rather, the test is whether the land could be used for purposes which would benefit from the improvement.

*Holden v. City of Eagan*, 393 N.W.2d 526, 528 (Minn.App.1986) (citations omitted). Appellants argue that the economic infeasibility of developing the property precludes a present benefit from the improvement. *See In re Village of Burnsville Assessments*, 287 N.W.2d 375, 377 (Minn.1979) (assessment not justified on speculative evidence landowner would not derive benefit from improvement for 15 to 20 years if at all).

The trial court, however, specifically found that appellants'

present opinion that the property is not ripe for development is discredited by [one of appellants'] prior statements and is not based upon any expertise.

It is for the trier of fact to decide the "weight and credibility of the testimony, including that of the expert witnesses." *Alstores Realty, Inc. v. State*, 286 Minn. 343, 353, 176 N.W.2d 112, 118 (1970).

Furthermore, the trial court found that appellants' appraiser

testified that the holding cost for the property increased as a result of the development project but further testified that there is a "possibility of developing the property and utilizing the assessment" and that a developer could "come close to breaking even."

Finally, the trial court found that appellants could not develop their land without the improvement and that the improvement was *essential* to development. We hold that the trial court's findings are supported by the evidence.

■ (b) *The finding that the assessment does not exceed the increase in value of the property due to the improvement.* We agree with the trial court that appellants presented no competent evidence showing that the assessment is greater than the increase in the market value of the property. A special assessment is presumed valid. *Tri–State*, 290 N.W.2d at 778. If

the assessed party introduces competent evidence that the assessment is greater than the increase in market value of the property resulting from the improvement, the presumption is overcome and the trial court must make an independent factual determination.

*Id.* In this case, we hold that the presumption in favor of the validity of the special assessment has not been rebutted.[1]

(c) *The finding the assessment is uniform.* The trial court found:

---

1. Because we find that appellants have not overcome the presumption of validity of the assessment roll, we do not reach appellants' arguments relative to the trial court's findings on the market value of the property before and after the improvement. For the same reason, we do not reach whether the trial court erred in admitting respondent's evidence of value based on the comparable sales approach to appraisal.

That the assessment of [appellants'] property and that of the [sports facility] and all other parcels in the project were each based upon [$54.52] per frontage foot for street and storm improvements and [$2,336.37] per acre for sanitary subtrunk, sanitary laterals and water laterals. This allocation is uniform and is consistent with established city policy.

These findings are supported by the evidence and are not contrary to law.

■ The law requires only that assessments be "roughly proportionate to the benefits accruing." *Anderson v. City of Bemidji*, 295 N.W.2d 555, 559 (Minn.1980) (citing *Village of Edina v. Joseph*, 264 Minn. 84, 97, 119 N.W.2d 809, 818 (1962)). Furthermore, the mere fact that an assessment on one lot is higher than another does not result in a lack of uniformity. *See Anderson* 295 N.W.2d at 560–61 (assessment apportionment among properties is a legislative function not disturbed unless clearly erroneous). Finally,

"it is not the province of the court to substitute its judgment for that of the body making such a decision, but merely to determine whether that body was within its jurisdiction, was not mistaken as to the applicable law, and did not act arbitrarily, oppressively, or unreasonably, and to determine whether the evidence could reasonably support or justify the determination."

*Id.* (quoting *Joseph*, 264 Minn. at 93, 119 N.W.2d at 815).

2. The admission or exclusion of evidence lies in the trial court's broad discretion. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990). This court will not disturb the trial court's ruling "unless it is based on an erroneous view of the law or constitutes an abuse of discretion." *Id.*

(a) *The exclusion of appellants' evidence of value based on the development cost approach to appraisal.* Appellants sought to introduce testimony of an appraiser, Berge Hansen, to address the criteria that the land must receive a special benefit from the improvement being constructed and that the assessment must not exceed the special benefit.

Hansen used the land residual analysis, also known as the development cost approach. The development cost approach reflects,

through cash flow analysis, the current price a developer-purchaser would be warranted in paying for the land, given the cost of developing it and the probable proceeds from the sale of developed sites.

*Ramsey Co. v. Miller*, 316 N.W.2d 917, 920 (Minn.1982), *quoted in Port Auth. of St. Paul v. Englund*, 464 N.W.2d 745, 748 (Minn.App.1991).

Hansen was prepared to testify that the improvement would benefit the property only if the property were developed. His professional opinion was that the improvement gave no benefit to appellants' property because the development costs exceeded any increase in market value, making development infeasible. Hansen's calculations were based on speculation as to when market demand would be such to support a profitable development.

The trial court refused to admit any evidence of value based on the development cost approach. Appellants contend that refusal was based on an erroneous view of the law. We find no error.

■ Traditionally, the courts have used the comparable sales approach to assess the fair market value of unimproved property. *Miller*, 316 N.W.2d at 919. When comparable properties are "so different that comparison [is] meaningless," the development cost approach may be admissible. *Id.* Evidence utilizing the development cost approach is admissible only upon the laying of a proper foundation showing:

(a) the land is ripe for development; (b) the owner can reasonably expect to secure the necessary zoning and other permits required for the development to take place; and (c) the development will not take place at too remote a time.

*Id.* at 922.

■ The trial court refused to admit evidence through Hansen based on the development cost approach in either appellants' case-in-chief or as rebuttal. We hold

that the trial court's finding that appellants had not laid a sufficient foundation was not erroneous.

Appellants argue it is inconsistent to say that the property *is not ripe* for development for purposes of determining the admissibility of their evidence based on the development cost approach and then to say that it *is ripe* for development for purposes of determining whether the improvement benefits the property. However, the source of inconsistency is appellants' own argument. If appellants were seeking to calculate present development costs as part of their development cost analysis, the "ripeness" prong of the *Miller* test would be satisfied. Appellants, however, argue that the property will not be ripe until some speculative date in the future and base their calculations on that date. Such an analysis does not satisfy the foundational requirements set out in *Miller*.

The exclusion of evidence based on the development cost approach is an evidentiary ruling designed to exclude "guesses."

> The primary question regarding the development cost approach evident in *Miller* is not whether the subject land is developed, but the likelihood of the proposed development, the probability of its associated costs, and how that development would be treated were the land actually sold.

*Englund*, 464 N.W.2d at 749. As discussed above, in determining whether the improvement benefits the property, the question is whether the property can be developed in the reasonably foreseeable future. This differs from speculation as to when in the future development might occur and then using that factor as a basis for calculations.

Nor do we see any compelling reason to use different evidentiary rules for condemnation cases and assessment cases. *See Southview Country Club v. City of Inver Grove Heights*, 263 N.W.2d 385, 388 n. 4 (Minn.1978) (same analytical framework is used in determining value of special benefits in both condemnation and assessment cases). An evidentiary ruling concerns the reliability and probative value of proffered evidence. If evidence is speculative, it should not be admitted.

(b) *The exclusion of evidence of an alleged conflict of interest resulting from the city manager having also been the project manager of the sports facility.* We hold that the trial court did not err in this ruling. The city manager's involvement in recommending the assessment was limited to a review of an agenda item prepared by the city engineer.

### DECISION

We hold that the trial court's findings are supported by the evidence and that the trial court did not err in its evidentiary rulings.

Affirmed.