John W. BUZICK, et al., Petitioner, Appellant,

v.

CITY OF BLAINE, Respondent.

No. CX–92–495.

Supreme Court of Minnesota.

Aug. 27, 1993.

David A. Allgeyer and Helen Mary Hughesdon, Minneapolis, for petitioner, appellant.

Paul T. Ostrow, St. Paul, for respondent.

GARDEBRING, Justice.

This case arises from a challenge to a $94,855.46 assessment levied by the City of Blaine against the appellants' property for public improvements. The trial court and court of appeals upheld the assessment, 491 N.W.2d 923 (1992). We affirm.

The appellants purchased the parcel on September 26, 1977, with the intent to develop it at some time in the future. The parcel is directly across Davenport Street from the National Sports Center, an amateur sports facility which was a site of events in the Special Olympics during 1990.

The city plan of Blaine included the future paving of Davenport, along with the construction of waste and sewer mains. The improvements were completed in 1989 to facilitate the development of the National Sports Center. The cost of the improvements were assessed to various adjacent property owners.

The appellants contested the assessment at a special hearing before the Blaine City Council, which approved the recommended assessments on September 6, 1990. The appellants then appealed the special assessment and a trial was held in August, 1991.

At trial, Blaine introduced evidence to show the average rate of consumption of industrial land and the availability of remaining parcels served by utilities. Blaine's city appraiser testified that appellants' property increased in value from $527,000 before the improvements to $699,000 subsequent to the improvements, for an increase of $172,000. He used the "paired sales analysis" or "comparable sales market data approach" method of valuing property.[1]

The appellants attempted to introduce expert testimony as to the value of the property using the "development cost approach" method of valuation.[2] The evidence was ruled inadmissible as lacking in foundation; however, the appellants' expert did testify as to his opinion that the property was not ripe for development and that there was an inadequate market for large industrial plats in Blaine.

---

1. In the comparable sales market data approach, sales of closely comparable parcels are compared to the parcel at issue to determine a valuation of that property. *See, Ramsey County v. Miller,* 316 N.W.2d 917, 920 (Minn.1982).

2. The development cost approach is designed to reflect, through cash flow analysis, the current price that a developer-purchaser would pay for the land, given the cost of developing it and the probable proceeds from the sale of the developed sites. *See, Ramsey County v. Miller,* 316 N.W.2d 917, 920 (Minn.1982), referring to American Institute of Real Estate Appraisers, *The Appraisal of Real Estate,* 140 (7th ed. 1978).

 The development cost approach is also referred to as: "subdivision development procedure;" "land residual analysis;" and "lot method of appraisal."

The trial court found that the assessment was proper. On appeal the court of appeals affirmed the trial court.

Appellant argues that the trial court improperly excluded evidence using the development cost approach and that Blaine's evidence was not sufficient to support the trial court's findings that the improvements increased the marketability of the appellants' property, that the assessment was uniform and consistent, and that the costs of the assessment did not exceed the benefit to the property. Appellant further asserts that the trial court erred in excluding evidence of an alleged conflict of interest on the part of the city manager.

 Special assessments are presumed to be valid if the land receives a special benefit from the construction of the improvement, if the assessment is uniform upon the same class of property, and if the assessment does not exceed the special benefit to the property. *Tri–State Land Co. v. City of Shoreview*, 290 N.W.2d 775, 777 (Minn.1980). The benefits from an improvement are calculated on the market value of the land before and after the improvement. *Anderson v. City of Bemidji*, 295 N.W.2d 555, 560 (Minn. 1980). "Introduction of the assessment roll into evidence constitutes prima facie proof that the assessment does not exceed special benefit." *Tri–State* 290 N.W.2d at 777. The contesting party has the burden of introducing competent evidence to overcome this presumption. *Id.*

 We first consider the issue of the trial court's decision to exclude evidence offered by appellant, based on the development cost method. The trial court has broad discretion in ruling whether or not to admit evidence and we will not overturn that ruling unless it is based on an erroneous interpretation of the law or constitutes an abuse of discretion. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990).

The standard for the admission of evidence using the development cost approach to determine the fair market value of property

was established in a condemnation proceeding, *Ramsey County v. Miller*, 316 N.W.2d 917 (Minn.1982). The landowners in *Miller* had submitted a proposed development plan to the city a year before the city made a recommendation to acquire the land by condemnation for use as a park and open space. In that case we decided that all relevant evidence relating to market value should be admissible, considering the current practices in the real estate area.

 However, to guard against the artificial inflation of market values by property owners, we specified the foundation grounds necessary before admission of development cost approach evidence. There must be a showing that:

(a) [T]he land is ripe for development;

(b) the owner * * * reasonably expect[s] to secure the necessary zoning and other permits required for the development to take place; and

(c) the development [must] not take place at too remote a time.

*Id.* at 922. In this case, appellants argue that there is an inconsistency in the trial court's finding that the property is "ripe" for development and in its decision to exclude evidence based on the development cost approach.

There was no error in the interpretation or application of the *Miller* foundational requirements. The appellants confuse the issue by equating "ripeness" with "economic feasibility." These concepts are distinguished as two separate foundational requirements which must be met before introduction of development cost approach evidence: the first of the *Miller* requirements relates to the possibility of development; the third *Miller* requirement relates to the timing of the development. Property is ripe for development when the improvements are completed making possible the development of the property at its highest and best use.[3] While it may not be economically feasible to develop property at the time that it is ripe for development, present infeasibility of de-

---

**3.** The trial court found that as recently as March 28, 1990, the appellants considered their property ripe for development when accepting the con-

demnation award for that portion of the parcel which was taken for construction of these improvements.

velopment does not make the property "un-ripe."

Economic feasibility directly relates to the third prong of *Miller*, as to when the property will be developed. The development cost approach method anticipates this feasibility by requiring a "deduction for the time lag by discounting, at an appropriate interest rate, the annual net income flow over the time needed for completion and market absorption of the project." *Appraisal* at 148, *supra.*

■ Furthermore, we cannot agree with the appellants that there should be different foundational requirements for the admission of development cost approach evidence in condemnation and assessment actions. On the contrary, admission of evidence that does not meet these foundational requirements would lead to the admission of highly speculative evidence with limited probative value in assessment proceedings, just as it would in condemnation proceedings.

There has been no showing by the appellants of an abuse of discretion by the trial court when it excluded the development cost approach evidence. The appellants' expert was allowed to testify and could have used other acceptable appraisal methods to establish the fair market value of the property before and after the improvements.

■ As to the second issue, we conclude that the city met its burden of proof under *Tri–State*. It properly entered the assessment roll into the record and offered additional testimony as to the value of the property before and after the improvements which established that the increase in value exceeded the assessment. In the absence of admissible, competent evidence to rebut the presumption of validity, the trial court found that the requirements of *Tri–State* were met. *Id.* at 777. Thus the assessment is valid.

■ As to the third issue, the appellants assert that the assessment process was fatally tainted because the city manager was also the project manager of the National Sports Center. We conclude it was not an abuse of discretion to exclude evidence regarding this alleged conflict of interest since such conflict, if any, is irrelevant to whether the assessment was valid.

Because we find no misinterpretation of law nor abuse of discretion in applying the foundational requirements of *Miller* and the exclusion of evidence, the assessment is valid and the trial court and court of appeals decisions are affirmed.

Affirmed.