AMERICAN BANK OF ST. PAUL,
successor in interest to 2700 East
Lake Street, LLC, Appellant,

v.

CITY OF MINNEAPOLIS, Respondent.

No. A10–1740.

Court of Appeals of Minnesota.

Aug. 1, 2011.

Garth G. Gavenda, Thomas C. Stewart, Anastasi & Associates, P.A., Stillwater, MN, for appellant.

Susan L. Segal, Minneapolis City Attorney, Robin H. Hennessy, Sara J. Lathrop, Assistant Minneapolis City Attorneys, Minneapolis, MN, for respondent.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus League of Minnesota Cities.

---

1. Because the 2011 version of the applicable ordinances does not change or alter the rights of the parties, and the parties do not dispute application of the current version of the ordinances, we refer to the 2011 version of the ordinances in our analysis. *Cf. McClelland v.*

Considered and decided by WRIGHT, Presiding Judge; KALITOWSKI, Judge; and LARKIN, Judge.

## OPINION

WRIGHT, Judge.

In this assessment dispute following the removal of an encroachment, appellant challenges the district court's decision to uphold the amount that respondent-city assessed against appellant's property. Appellant argues that the district court erred by (1) applying the incorrect legal standard, (2) finding that appellant did not introduce competent evidence and failing to weigh the evidence, and (3) permitting respondent-city to introduce evidence that was not properly disclosed to appellant during discovery. We affirm.

## FACTS

In 1999, 2700 East Lake Street LLC (LLC) purchased a parcel of land (property) in Minneapolis. The basement of a building on the property included an areaway, which is a below-grade area that extends beneath the street. Respondent City of Minneapolis (city) permits areaways to exist as long as they do not interfere with the "public good," such as street paving, curbs, gutters, and streetscapes. Minneapolis, Minn., Code of Ordinances (MCO) § 95.90(c) (2011).[1] In 2005, because the areaway associated with the LLC's property encroached on Hennepin County's right-of-way and interfered with the county's reconstruction of East Lake Street, the city ordered the LLC to re-

*McClelland,* 393 N.W.2d 224, 226–27 (Minn. App.1986) (indicating that appellate court applies current version of statute unless doing so alters matured or unconditional rights of parties or creates other injustice), *review denied* (Minn. Nov. 17, 1986).

move the areaway.[2] The city advised the LLC that the LLC could arrange to remove the areaway using its own contractor, or the city would remove the areaway using a city-hired contractor and assess the cost of the removal against the property's taxes. After attempting unsuccessfully to obtain financing for the removal of the areaway, the LLC asked the city to remove the areaway and assess the cost.

The city awarded the contract for the areaway removal to the lowest responsible bidder, as required by municipal bidding law. See Minn.Stat. § 429.041, subd. 2 (2010); MCO § 18.90 (2011). The city's contractor began the areaway removal in July 2007. Because the city's contractor did not meet its contract obligations, the city completed the areaway removal itself in September 2008. The total cost of the areaway removal, excluding any cost attributable to the termination of the contract with the city contractor, was $409,358.46. The city assessed this amount against the property.

The LLC appealed to the district court, arguing that the assessment amount exceeds the value of the benefit conferred on the property. Appellant American Bank of St. Paul (American), which held a mortgage against the property, foreclosed on its mortgage and, after expiration of the redemption period, became the fee owner of the property on September 29, 2009. American, the LLC's successor in interest, proceeded with the assessment appeal. American tendered a discovery request for a valuation of the benefit conferred on the property. The city's response referred American to the $409,358.46 in costs incurred by the city. And in response to American's request for the identity of the city's witnesses, the city advised American that this information was unknown at that time.

The city moved for summary judgment, arguing, in part, that the property received a service in the form of the removal of a nuisance or illegal condition, which warrants an assessment based on the cost of that service. The district court denied summary judgment.

Approximately three weeks before trial, both parties filed exhibit lists and witness lists. Both parties moved the district court to exclude evidence that they claimed was improperly withheld by the other party during discovery. The district court denied both motions. The district court reasoned that neither party fully complied with otherwise appropriate discovery requests and none of the witnesses had been deposed, but because the disputed issue was known to both parties, there was little risk of unfair surprise.

At the bench trial that followed, American presented evidence that the market value of the property was $3,850,000 in 2007 and was $3,030,000 on September 28, 2009. The city did not present evidence regarding the market value of the property, either before or after the areaway removal; and it did not refute American's evidence. Rather, the city's expert testified that the existence of a nuisance or illegal condition, such as the areaway, reduces a property's value by an amount equal to the cost to remove the nuisance or illegal condition. And once the nuisance or illegal condition has been removed, the property's value increases by that same amount.

The district court upheld the assessment amount, finding that American's evidence did not competently reflect the change in the property's fair market value attributable to the areaway removal and that the

2. A contract between the city and the county granted the city such authority.

city's expert was credible, competent, and compelling. This appeal followed.

## ISSUES

I. Did the district court apply the incorrect legal standard when evaluating respondent-city's assessment for the areaway removal?

II. Did the district court err by permitting respondent-city to introduce evidence that was not properly disclosed to appellant during discovery?

## ANALYSIS

### I.

■ American argues that the district court erred because it did not apply the special-benefit standard, which considers the degree to which the property's market-value increase, if any, is attributable to the improvement; rather, the district court considered the costs that the city incurred. The city counters that the district court's decision is consistent with the special-benefit standard. Alternatively, by notice of related appeal, the city argues that a different legal standard—one that depends on reasonableness rather than the property's market value—should apply to the removal or abatement of nuisances because that is not a traditional local improvement. Whether the district court applied the correct legal standard presents a question of law, which we review de novo. *Thompson v. Thompson*, 739 N.W.2d 424, 430 (Minn. App.2007).

### A.

■ A public authority's power to levy a special assessment for improvements originates from its taxing power and is promulgated by legislative action. *City of St. Louis Park v. Engell*, 283 Minn. 309, 315, 168 N.W.2d 3, 7 (1969). This taxing power "is practically absolute," except for constitutionally imposed limitations. *Id.* Article 10, section 1, of the Minnesota Constitution provides: "Taxes shall be uniform upon the same class of subjects, and shall be levied and collected for public purposes.... The legislature may authorize municipal corporations to levy and collect assessments for local improvements upon property benefited thereby without regard to cash valuation." The Minnesota Supreme Court has interpreted this constitutional provision to require that special assessments "be uniform upon the same class of property, that they be confined to property specially benefited by the improvement, and that they do not exceed such special benefits." *Quality Homes, Inc. v. Vill. of New Brighton*, 289 Minn. 274, 280, 183 N.W.2d 555, 559 (1971) (quotation omitted). And Minn.Stat. § 429.051 (2010) provides that "[t]he cost of any improvement, or any part thereof, may be assessed upon property benefited by the improvement, based upon the benefits received." Accordingly, Minnesota has adopted a general rule that special benefits should be measured by considering the increase in the market value of the property attributable to the improvement. *E.g., Engell*, 283 Minn. at 316, 168 N.W.2d at 8; *In re Superior St. in Duluth*, 172 Minn. 554, 566, 216 N.W. 318, 323 (1927); *State ex rel. Burger v. Dist. Court of Ramsey Cnty.*, 33 Minn. 295, 310, 23 N.W. 222, 229 (1885). Under this special-benefit standard:

> (a) The land must receive a special benefit from the improvement being constructed, (b) the assessment must be uniform upon the same class of property, and (c) the assessment may not exceed the special benefit. Special benefit is measured by the increase in the market value of the land owing to the improvement.

*Tri–State Land Co. v. City of Shoreview,* 290 N.W.2d 775, 777 (Minn.1980) (quotation omitted).

In *Country Joe, Inc. v. City of Eagan,* however, the Minnesota Supreme Court recognized a distinction between revenue collected under the taxing power and regulatory service fees collected under the police power. 560 N.W.2d 681, 686 (Minn. 1997). The *Country Joe* court observed that the general police power does not extend to municipal revenue-raising measures and that, when "a city's true motivation was to raise revenue—and not merely to recover the costs of regulation—we have disregarded the fee label attached by a municipality and held that the charge in question was in fact a tax." *Id.* The *Country Joe* court concluded that Eagan's road-unit-connection charge was a tax because the city used the revenue to fund all major street construction and repairs. *Id.* at 686–87. Thus, the *Country Joe* court recognized that a city may collect regulatory service fees under the police power provided that the fees are not general revenue-raising measures.

Other jurisdictions have recognized this distinction. For example, Wisconsin has expressly provided for this distinction in its assessment statute:

> The amount assessed against any property for any work or improvement which does not represent an exercise of the police power may not exceed the value of the benefits accruing to the property. If an assessment represents an exercise of the police power, the assessment shall be upon a reasonable basis as determined by the governing body of the city, town or village.

Wis. Stat. § 66.0703(1)(b) (2010); *accord Genrich v. City of Rice Lake,* 268 Wis.2d 233, 673 N.W.2d 361, 368 n. 7 (Wis.Ct.App. 2003). Other jurisdictions have addressed this distinction in caselaw. *See Potts*

*Constr. Co. v. N. Kootenai Water Dist.,* 141 Idaho 678, 681, 116 P.3d 8, 11 (2005) (citing *Brewster v. City of Pocatello,* 115 Idaho 502, 504–05, 768 P.2d 765, 767–68 (1988)) (observing that a fee is enacted under city's police power and assessed for public service directly rendered to a particular consumer, while a tax is forced contribution by the general public to meet public needs); *Hooksett Drive-in Theatre, Inc. v. Hooksett,* 110 N.H. 287, 266 A.2d 124, 126 (1970) (recognizing that "a sharp distinction" exists between city's taxing power for generating revenue and its police power for regulating matters relating to "the health, morals, safety, or general welfare of the community" (quotation omitted)); *Parking Auth. of Trenton v. City of Trenton,* 40 N.J. 251, 191 A.2d 289, 293 (1963) (stating that building permit fee is an exercise of municipal police power to defray cost of regulation and not a tax); *City of Tullahoma v. Bedford Cnty.,* 938 S.W.2d 408, 412 (Tenn.1997) (observing that fees defray cost of providing service or benefit to particular person, while local taxes raise revenue to pay government's general debts). These other jurisdictions have required that a regulatory fee enacted under a city's police power bear a reasonable relationship to the regulatory expense. *E.g., Brewster,* 115 Idaho at 504, 768 P.2d at 767; *Hooksett,* 266 A.2d at 126.

■ American contends that the purpose of an assessment appeal would be undermined without application of the special-benefit standard because the city's assessment amount never could be challenged. We disagree. Assessments collected under the police power remain subject to fairness and due-process protections. For example, although a property owner cannot hire an alternative contractor to perform local improvements, such as repaving a road or constructing a sewer line, a city may provide a property

owner who is subject to a regulatory service the option to perform and finance the work without the city's involvement. *See* Minn.Stat. § 429.101, subd. 1(b) (2010) (providing that city may place responsibility on property owner or occupant to do certain work personally). And cities must abide by municipal bidding laws and hire the lowest responsible bidder. Minn.Stat. § 429.041, subd. 2; MCO § 18.90. Moreover, a property owner may challenge the reasonableness of a regulatory service fee. *E.g., Brewster*, 115 Idaho at 504, 768 P.2d at 767 (requiring that service fee bear a reasonable relationship to regulatory expense); *Hooksett*, 266 A.2d at 126 (same).

Accordingly, we hold that an assessment collected under a city's police power is subject to a reasonableness standard rather than the special-benefit standard that applies to assessments collected under a city's taxing power.

### B.

■ We next determine whether the assessment at issue here was imposed under the city's police power and is therefore subject to the reasonableness standard. The property's areaway interfered with Hennepin County's right-of-way and posed a safety hazard during the reconstruction of East Lake Street. This constitutes a nuisance that, under the city ordinance, the property owner is financially responsible for removing. *See* Minn.Stat. § 561.01 (2010) (defining nuisance as "[a]nything which is injurious to health, ... or an obstruction to the free use of property"); MCO § 95.20 (2011) (providing that removing an obstruction and restoring a right-of-way "to a safe condition ... will be at the sole expense of the property owner"); *see also* 13 Eugene McQuillin, *The Law of Municipal Corporations* § 37.16, at 87 (3d ed.2008) (citing *Wallen-*

*berg v. City of Minneapolis*, 111 Minn. 471, 127 N.W. 856 (1910)) ("In improving and regulating the use of streets there is both an obligation and power to keep them free from obstructions and unreasonable encroachments, and to remove summarily obstructions and nuisances.").

■ Minnesota statutes permit cities to collect assessments to defray the cost of regulatory services. For example, a city may collect "unpaid special charges" in the form of "a special assessment against the property benefited for all or any part of the cost" of, among other enumerated services, the removal of snow and ice from sidewalks, the removal of weeds and diseased trees, and the inspection of housing-code violations. Minn.Stat. § 429.101, subd. 1 (2010). Section 429.101 also permits a city to collect delinquent vacant-building-registration fees through special assessments. *Id.*, subd. 1(12). Other Minnesota statutes authorize the state and local governments to collect unpaid service fees in the form of an assessment. *E.g.*, Minn.Stat. §§ 89.56, subd. 3 (unpaid service fees for tree pest control), 444.075, subd. 3e (unpaid water and sewer bills), 443.015 (unpaid garbage bills) (2010). Under the distinction recognized in *Country Joe* and in other jurisdictions, these assessments are not collected to raise revenue under a city's taxing power; rather, they are collected to recover unpaid regulatory service fees under a city's police power. The cost of removing nuisances is among the regulatory service fees collectable by assessment. *See* Minn.Stat. § 429.101, subd. 1(a)(3) (providing that city may assess property for removing public health or safety hazards).

Neither our legal research nor the parties' citations direct us to any law that applies the special-benefit standard to assessments collected for the removal of a nuisance. Rather, Minnesota courts have

applied the special-benefit standard to local improvements that are readily distinguishable from the cost of removing a nuisance. For example, in *Anderson v. City of Bemidji*, Bemidji assessed various properties for the cost of constructing a sanitary sewer line through a neighborhood. 295 N.W.2d 555, 557 (Minn.1980). The Minnesota Supreme Court observed that assessments on "various properties [must] be roughly proportionate to the benefits accruing to each as a result of the improvement" to satisfy the Minnesota constitution's requirement that taxes be uniform. *Id.* at 559. The *Anderson* court held that the assessment, which was based on the proportionate length of the sewer line in front of each property in the neighborhood, was uniform and proportionately reflected the benefits conferred on each property by the sewer line. *Id.* at 557–58, 560–61. But unlike *Anderson*, in which the assessment raised revenue for the construction of a local improvement, a city does not assess a property for the removal of a nuisance in order to raise revenue. Rather, the purpose of a property assessment for nuisance removal is to defray the cost of the service of removing the nuisance.

■ The city's assessment for the areaway removal at issue here is for the removal of a nuisance and is more akin to a regulatory service fee than to a local improvement. There is no evidence in the record that the city's assessment for the areaway removal is a revenue-raising measure. A city employee testified that, if the city cannot assess the cost of regulatory services against the property affected by the service, the city would have to recover those service costs from the general tax base, including taxpayers unaffected by the service. The service provided a direct benefit to the property by removing a nuisance as required by the city. And because the service affected only one property, the uniformity requirement of the special-benefits standard is inapposite here. Thus, we conclude that the city's assessment of the cost of the areaway removal was a regulatory service fee imposed under the police power rather than a revenue-raising measure imposed under the taxing power.

■ Because the city's assessment for the areaway removal was a regulatory service fee rather than a tax, we apply the reasonableness standard articulated in Part I.A., *supra.* American stipulated to the cost of the service rendered. The record reflects that the assessment amount was proportionate to the cost of the service rendered; and the record contains no evidence that the cost was unreasonable or not reasonably related to the regulatory expense. Moreover, neither due-process nor fairness concerns are present here. When given the choice, the property owner chose to permit the city to perform the areaway removal rather than perform the work without the city's involvement. The city abided by the municipal bidding laws, hired the lowest responsible bidder, and deducted from the assessment any costs associated with the contractor's failure to fulfill its obligations. Accordingly, American is not entitled to relief.

■ We observe that, even if we apply the special-benefit standard here, American's challenge is unavailing. A city's assessment is presumed to be valid, and introduction of the assessment roll into evidence is prima facie proof that an assessment does not exceed any special benefit conferred on the property. *Carlson–Lang Realty Co. v. City of Windom*, 307 Minn. 368, 370, 240 N.W.2d 517, 519 (1976). The party challenging the assessment may overcome this presumption "by introducing competent evidence that the

assessment is greater than the increase in market value of the property due to the improvement." *Id.; see also G.E. Qvale v. City of Willmar,* 223 Minn. 51, 54, 25 N.W.2d 699, 702 (1946) (stating that party challenging assessment bears burden of proving invalidity of assessment). American argues that the district court erred by finding that American's uncontradicted evidence was not competent and by failing to weigh the evidence.

 A district court's factual findings will not be disturbed absent clear error. Minn. R. Civ. P. 52.01. When reviewing findings of fact for clear error, we recognize that it is the district court's exclusive responsibility to reconcile conflicting evidence. *Prahl v. Prahl,* 627 N.W.2d 698, 702 (Minn.App.2001). A finding is clearly erroneous when, after viewing the evidence in the light most favorable to the finding, we are nonetheless "left with the definite and firm conviction" that the district court made a mistake. *Id.* (quotation omitted). We also are mindful that a factfinder is not required to accept uncontradicted testimony "if the surrounding facts and circumstances afford reasonable grounds for doubting its credibility." *Varner v. Varner,* 400 N.W.2d 117, 121 (Minn. App.1987).

 For the purpose of establishing a prima facie case that an assessment is valid, a "calculation based on the cost of the improvement is deemed reasonably related to the value of special benefits." *Bisbee v. City of Fairmont,* 593 N.W.2d 714, 719 (Minn.App.1999) (quoting *Continental Sales & Equip. v. Town of Stuntz,* 257 N.W.2d 546, 550 (Minn.1977)). Here, the city based its assessment on the total cost it incurred and explained how that total amount was reached. American stip-

ulated to that amount. Under the special-benefit standard, the burden then would shift to American to present competent evidence that the assessment exceeds the increase in market value of the property attributable to the areaway removal. The district court found that American did not present competent evidence because American's valuations "reflect periods far before and after the Areaway removal," and "they do not reflect the actual benefit that the Areaway removal conferred to the property." The district court also found that "attributing the change in property value solely to the Areaway does not take into account the fluctuations in the market and nationwide price drop in the real estate market." The record supports these findings. American presented evidence of the property's 2007 tax value, which was assessed six months before the areaway removal; the purchase price at the sheriff's sale, which occurred six months after the city completed the areaway removal; and an appraisal of the fair market value of the property, which was conducted one year after the city completed the work. American's appraiser testified that the property's market-value decrease is not attributable only to the areaway removal, because the fair market values of real estate in the national and local real estate markets generally decreased between 2007 and 2009. Thus, the district court's finding that American's evidence is not competent and does not accurately reflect the difference in the property's fair market value attributable to the areaway removal is not clearly erroneous. And by failing to meet its burden of producing competent evidence to rebut the city's prima facie case that the assessment amount was valid,[3] American would not be entitled to

---

**3.** The district court found that the city's evidence was "credible, competent and compelling" and American's evidence was not competent. But the district court was not required to weigh the evidence because American failed to meet its burden. *See*

relief even if the special-benefit standard were applied.

## II.

■ American argues that the district court abused its discretion by declining to exclude the testimony and related evidence of witnesses that the city failed to disclose. We review evidentiary rulings in a civil proceeding only if there has been a motion for a new trial in which the rulings have been assigned as error. *Sauter v. Wasemiller,* 389 N.W.2d 200, 201 (Minn. 1986); *accord Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.,* 664 N.W.2d 303, 309 (Minn.2003). This requirement recognizes that the pace of a trial requires a district court to rule on numerous substantive objections rapidly during the course of a trial, often with little, if any, advance notice; and a motion for a new trial permits the district court to later reconsider an objection in the context of the entire case. *Alpha Real Estate,* 664 N.W.2d at 309. A motion for a new trial permits the district court the opportunity to correct an error, fully explain its reasoning, develop critical aspects of the record, and eliminate the need for appellate review. *Id.*

American did not raise these evidentiary objections in a motion for a new trial. Because these issues were not properly preserved for appellate review, we decline to address them.

## DECISION

An assessment collected under a city's police power is subject to a reasonableness standard rather than the special-benefit standard that applies to assessments collected under a city's taxing power. Because respondent's assessment for the removal of an areaway from appellant's property constitutes a regulatory service fee for the removal of a nuisance collected under the city's police power and it is reasonable and related to the regulatory expense, appellant is not entitled to relief. We decline to address appellant's evidentiary objections, which were not preserved for appellate review.

**Affirmed.**

---

*Carlson–Lang Realty Co.,* 307 Minn. at 370, 240 N.W.2d at 519–20 (observing that if property owner presents competent evidence rebutting city's prima facie case, district court must weigh evidence and make a factual determination).