*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0015**

First Baptist Church of St. Paul, et al.,
Appellants,

vs.

City of St. Paul,
Respondent.

**Filed August 31, 2015
Affirmed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-CV-11-8862

John G. Hoeschler, John G. Hoeschler, P.A., Eagan, Minnesota (for appellants)

Samuel J. Clark, St. Paul City Attorney, K. Meghan Kisch, Assistant City Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Worke, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellants challenge the district court's grant of summary judgment to respondent, arguing that respondent's right-of-way maintenance assessment (1) is a tax, (2) does not meet the special-benefit standard, (3) is improperly based on estimated costs,

(4) fails to comply with respondent's charter and policies, and (5) is arbitrary and capricious. Because we conclude that the assessment is a regulatory service fee, we affirm.

**FACTS**

Appellants First Baptist Church of St. Paul and Church of St. Mary (the churches) challenge the 2011 right-of-way maintenance (ROW) assessment levied by respondent City of St. Paul (the city). The city maintains all of the streets and sidewalks within the city limits and uses an annual ROW assessment to recoup the costs related to street maintenance. The amount the city assesses each property depends on the property location, size, street material, and services provided.

In the downtown district, the city categorizes property as either "all property" or "residential condominium." The all-property ROW assessment rate is higher than the residential-condominium rate. Outside of downtown, the city categorizes property as either "commercial" or "residential." The commercial ROW assessment rate is higher than the residential rate. The city charges tax-exempt properties located in the downtown district at the all-property rate, and it charges tax-exempt properties located outside of downtown at the residential rate. The churches are located in the downtown district and are assessed at the all-property rate.

In November 2010, the St. Paul City Council held a public hearing to establish the level of the ROW services to be performed in 2011 and the amount of service charges to be levied against benefited properties. In September 2011, the city council proposed the 2011 ROW assessment. The churches objected to the proposed ROW assessment. On

2

October 5, 2011, the city held a public hearing, the churches reiterated their objections, and the city council unanimously adopted the 2011 ROW assessment.

The churches appealed to the district court, challenging the assessment. Both the city and the churches moved for summary judgment. The churches then moved to amend their assessment appeal based on newly discovered evidence. The district court granted summary judgment in favor of the city without addressing the motion to amend. The churches then appealed to this court, and we remanded the case to the district court for a ruling on the churches' motion to amend. *See First Baptist Church of St. Paul, et al. v. City of St. Paul*, No. A12-1582, 2013 WL 1943045, at *2 (Minn. App. May 13, 2013).

On remand, the district court granted the churches' motion, and the churches filed an amended and restated notice of appeal of the ROW assessment. The district court indicated that the "matter will be deemed to have been restarted from ground zero." In the amended and restated notice of appeal, the churches alleged that (1) the 2011 ROW assessment was not uniform across the same class of property; (2) the services funded by the assessment provided no special benefit to the churches' properties; (3) the assessment exceeded the value of any special benefit to the properties; (4) the assessment was improperly calculated; (5) the city failed to follow its charter, code, and policies; and (6) the assessment program was arbitrary and capricious.

The city and the churches again moved for summary judgment. The district court granted summary judgment to the city, determining that the assessment is a fee for services and that the churches "failed to meet their burden of establishing that the assessment was unreasonable." The district court also found that the city properly

3

followed its charter, ordinances, and policies and that the churches' other claims were outside the scope of the district court's authority. This appeal follows.

**D E C I S I O N**

Summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. On appeal from summary judgment, we review "whether there are any genuine issues of material fact and whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76 (Minn. 2002). We "view the evidence in the light most favorable to the party against whom summary judgment was granted." *Id.* at 76-77.

**I.**

The churches argue that the district court erred by concluding that the ROW assessment is a regulatory service fee and not a tax. Because the district court applied the law to undisputed facts, we review the district court's characterization of the assessment as a legal conclusion, which is subject to de novo review. *See All Parks All. for Change v. Uniprop Manufactured Hous. Cmtys. Income Fund*, 732 N.W.2d 189, 193 (Minn. 2007) ("The application of the law to undisputed facts is subject to de novo review.").

"Any city operating under a home rule charter may proceed either under [state statute] or under its charter in making an improvement . . . ." Minn. Stat. § 429.111 (2014). The term "improvement" includes

4

> maintaining sidewalks, pavement, gutters, curbs, . . . maintain[ing] storm and sanitary sewers and systems, . . . maintain[ing] street lights and street lighting systems, . . . plant[ing] trees on streets and provid[ing] for their trimming, care, and removal, . . . maintain[ing] signs, posts, and other markers . . . .

Minn. Stat. § 429.021, subd. 1 (2014). Here, the city is a home-rule charter city and has proceeded under the provisions of its charter in levying the ROW assessment. That significant fact guides our analysis of this issue.

The charter states that "[t]he city shall have the power to levy assessments to pay all or any part of the cost of improvements as are of a local character, but in no case shall the amounts assessed exceed the benefits to the property." St. Paul, Minn., City Charter ch. 14, § 14.01 (2014). The charter also states that an assessment may be challenged in three ways: a finding of fraud, a demonstrable mistake of fact or law, or when the assessment exceeds the actual benefit. *Id.*, § 14.01.4(2) (2014).

The limitations on a city's power to levy assessments depend on whether the assessment is in fact a tax or a fee. *Am. Bank of St. Paul v. City of Minneapolis*, 802 N.W.2d 781, 785-86 (Minn. App. 2011). The Minnesota Supreme Court "recognize[s] a distinction between revenue collected under the taxing power and regulatory service fees collected under the police power." *Id.* at 786 (citing *Country Joe, Inc. v. City of Eagan*, 560 N.W.2d 681, 686 (Minn. 1997)). If a special assessment is a general revenue-raising measure, it is a tax and the special-benefit standard applies. *Id.* But if a city imposes an assessment under its police power, then the assessment is a regulatory service fee, and the fee is upheld unless it is unreasonable. *Id.* at 786-87. A municipality has wide discretion

5

to use its police powers to preserve public health, protect public safety, and abate nuisances. *State v. Crabtree Co.*, 218 Minn. 36, 40, 15 N.W.2d 98, 100 (1944).

Here, the 2011 ROW assessment covers the cost of services such as sweeping, patching, and sealing streets and alleys; patching unimproved rights-of-way; overlaying streets; snow plowing, sanding, and salting; tree trimming; streetlight and traffic sign repair; litter pick up; enforcement of ordinances; and emergency maintenance services. The purpose of the 2011 ROW assessment is to "recoup the cost" of maintaining all city streets and sidewalks. The money collected through the ROW assessment program is not used to pay for other city programs. The services improve the city's health and safety by removing debris and snow from city streets, repairing streetlights and signs, and patching potholes in the streets, alleys, and sidewalks. Therefore, we conclude that the district court correctly concluded that the ROW assessment is a regulatory service fee and that all of the "services relate to the regulatory exercise of the city's police power."

## II.

We next consider whether the district court correctly concluded that the assessment is reasonable and that no genuine issue of material fact exists regarding its reasonableness. The churches argue that the assessment is not reasonable because, in part, (1) the assessment is based on estimated costs, (2) the amounts assessed to the churches' properties exceed the actual costs, and (3) there is no rational basis for assessing downtown churches at a higher rate than other churches. The district court found that the churches "failed to meet their burden of establishing that the assessment was unreasonable."

6

A regulatory service fee is reasonable if the record demonstrates that the assessment amount is proportional to the cost of the services rendered. *See Am. Bank*, 802 N.W.2d at 788. Here, the city has acknowledged that the all-property assessment rate in the downtown district is greater than the average per-foot cost to provide the services throughout the downtown district and that the residential-condominium rate is less than the average per-foot cost. But the city also stated that commercial properties normally generate more traffic than residential properties. In addition, the churches acknowledge that the city's total 2011 assessment only covered 83% of the annual cost of services citywide. Because the assessment is reasonably related to the cost of services and because the city has broad discretion when exercising its police powers, we conclude that the district court did not err by finding that the assessment was reasonable.

### III.

The churches next argue that the district court erred by not finding that the assessment was improperly calculated based upon estimated costs. The churches argue that the assessment cannot be based on estimated costs or averages and must instead be based on actual costs, citing this court's decision in *Bisbee v. City of Fairmont*, 593 N.W.2d 714 (Minn. App. 1999).

In *Bisbee*, we affirmed the district court's grant of summary judgment to the property owners, holding that the assessment method used by the city was prima facie invalid because it did not approximate the special benefits actually received and instead relied on the previous three-year average cost of construction. 593 N.W.2d at 719. But *Bisbee* involved a special assessment governed by chapter 429 that is subject to the

special-benefit standard. *Id.* at 718. Here, as we previously noted, the ROW assessment is governed by the city's charter and is a regulatory service fee subject to the reasonableness standard. Therefore, *Bisbee*'s holding does not apply, and the district court did not err by finding that the assessment was not improperly calculated based on estimated costs.

**IV.**

The churches argue that the assessment fails to comply with the city's charter, code, and policies because the city never adopted an assessment roll in 2011 as required by the city charter and the city ignored its policy that churches would be assessed at residential rates.

**Assessment Roll**

The city contends that the churches waived the assessment-roll issue because they failed to include it in their amended and restated notice of appeal. But review of the amended and restated notice of appeal demonstrates that the churches refer to the lack of an assessment roll consistently throughout the amended notice and specifically allege that this violates the city charter. The district court granted summary judgment to the city on this claim, stating that the churches "misinterpret the charter," but the district court did not address the churches' specific argument that the city failed to adopt an assessment roll.

The city's charter requires that "an assessment roll shall be prepared . . . and shall be filed and open to public inspection" after the cost of an improvement is calculated. St. Paul, Minn., City Charter, ch. 14, § 14.01.1(2) (2014). There is no assessment roll in

8

the record before this court. But even if the city failed to comply with its charter by not filing an assessment roll, the churches have failed to demonstrate that they suffered any prejudice as a result.

The city provided notice that it would hold a hearing on November 3, 2010, to establish the type and level of services to be performed in 2011, in accordance with section 62.02 of its administrative code. The city then provided notice that it would hold a hearing on October 5, 2011, to hear from the public regarding the proposed 2011 assessment amount and rates, in accordance with section 64.02 of its administrative code. The churches had an opportunity to be heard by objecting to the proposed assessment in writing prior to this hearing and orally at the October 5 hearing. And the churches knew the rate at which their properties would be assessed. Therefore, the churches have not been prejudiced by any failure by the city to comply with its procedures set forth in its charter or code.

**Policy to Assess Churches at Residential Rates**

The churches argue that the city violated its own policy by assessing downtown churches at the all-property rate rather than the residential-condominium rate. The churches acknowledge that the city does not have an explicit written policy on its treatment of tax-exempt churches; instead they point to language contained in the city's assessment resolutions passed between 2004 and 2009, which each state: "Churches and church properties would be assessed at the residential rate." But the all-property rate assessed in the downtown district applies to all properties except residential condominiums, which means that there may be residential properties in the downtown

district that are not condominiums and that are also assessed at the all-property rate. Therefore, the churches have not demonstrated that the city is violating its policy by assessing tax-exempt churches at the all-property rate.

## V.

Lastly, the churches argue that the assessment is arbitrary and capricious. But the parties' joint statement of the case in the district court stated, "Appellants intend to waive their additional claims that the city's procedure and practices are so inconsistent, arbitrary and capricious that the entire [ROW] program should be declared illegal . . . ." Therefore, because the churches abandoned the issue before the district court, we conclude that this issue is waived on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

**Affirmed.**